[No. S071934. June 5, 2000.]

ROSALBA CORTEZ, Plaintiff and Appellant, v.
PUROLATOR AIR FILTRATION PRODUCTS COMPANY, Defendant
and Appellant.

164

## Counsel

Cameron M. Cunningham and Newman Strawbridge for Plaintiff and Appellant.

McCarthy, Johnson & Miller, John J. Davis, Jr., and Patricia A. McCormick for Pipe Trades District Council No. 36 as Amicus Curiae on behalf of Plaintiff and Appellant.

Van Bourg, Weinberg, Roger & Rosenfeld, Victor J. Van Bourg, David Rosenfeld and Ellyn Moscowitz for the California Labor Federation, AFL-CIO and the State Building and Construction Trades Council of California, AFL-CIO as Amicus Curiae on behalf of Plaintiff and Appellant.

California Rural Legal Assistance, William G. Hoerger and Michelle Crawford for Isabel Delgado Carrillo as Amicus Curiae on behalf of Plaintiff and Appellant.

Brad Seligman; Saperstein, Goldstein, Demchak & Baller, Linda M. Dardarian and Aaron Kaufmann for Asian Law Caucus, Inc., East San Jose Community Law Center, Employment Law Center—A Project of the Legal Aid Society of San Francisco, La Raza Centro Legal, The Impact Fund and Women's Employment Rights Clinic—Golden Gate University School of Law as Amici Curiae on behalf of Plaintiff and Appellant.

Rosner, Owens & Nunziato, Tom A. Nunziato, Phil J. Montoya, Jr.; Haight, Brown & Bonesteel, Theresa M. Marchlewski, Jules S. Zeman and Morton Rosen for Defendant and Appellant.

Manatt, Phelps & Phillips, Robert E. Hinerfeld, Barry S. Landsberg and Terri D. Keville for First Healthcare Corporation as Amicus Curiae on behalf of Defendant and Appellant.

Fred J. Hiestand for the Association for California Tort Reform as Amicus Curiae on behalf of Defendant and Appellant.

Severson & Werson, Jan T. Chilton and William L. Stern for California Bankers Association as Amicus Curiae on behalf of Defendant and Appellant.

Brobeck, Phleger & Harrison, James N. Penrod, David J. Brown, Samuel J. Fleischmann and Edward D. Totino for the Employers Group as Amicus Curiae on behalf of Defendant and Appellant.

Mitchell, Silberberg & Knupp, Lawrence A. Michaels and Jenny Schneider for California Employment Law Council as Amicus Curiae on behalf of Defendant and Appellant.

Heller Ehrman White & McAuliffe, Paul Alexander, Vanessa Wells, Victoria Collman Brown and Amy Van Zant for State Farm Mutual Automobile Insurance Company as Amicus Curiae on behalf of Defendant and Appellant.

Robie & Matthai, Pamela E. Dunn and Daniel J. Koes for United Services Automobile Association as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer, Attorney General, Hershel T. Elkins, Assistant Attorney General, and Ronald A. Reiter, Deputy Attorney General, for the Attorney General of California as Amicus Curiae.

Thomas J. Orloff, District Attorney (Alameda), Julie Dunger, Assistant District Attorney; and Lawrence G. Brown for California District Attorneys Association as Amicus Curiae.

---

**OPINION**

**BAXTER, J.**—In this matter, a companion to *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116 [96 Cal.Rptr.2d 485, 999 P.2d 718] (*Kraus*), we address additional issues arising out of a representative action brought under the unfair competition law (UCL). (Bus. & Prof. Code, § 17200 et seq.)[1] Defendant and petitioner Purolator Air Filtration Products Company (Purolator) contends, as did the defendants in *Kraus*, that failure to certify this action as a class action denied it due process. It also argues that the Court of Appeal erred in holding that an order to disgorge the benefit of failing to pay statutorily mandated overtime wages is a monetary remedy

---

[1] Unless otherwise indicated, all statutory references are to the Business and Professions Code.

authorized by section 17203,[2] that equitable defenses may not be asserted in a UCL action for unpaid wages, and that the four-year statute of limitations of section 17208[3] governs, rather than the three-year period of limitations of Code of Civil Procedure section 338, subdivision (a), that would otherwise apply in an action to recover unpaid overtime brought pursuant to Labor Code section 1194.

Consistent with our conclusion in *Kraus, supra,* 23 Cal.4th 116, that the UCL does not authorize fluid recovery in a representative UCL action, we conclude here that, while disgorgement to a fluid recovery fund of all profit defendant may have earned by withholding overtime wages is not permitted, defendant may be compelled to restore unpaid wages to its employees and former employees. Once earned, those unpaid wages became property to which the employees were entitled. Failure to promptly pay those wages was unlawful and thus an unfair business practice. Section 17203 expressly authorizes orders necessary to restore money or property to any person in interest from whom the money or property has been obtained through an unfair business practice.

We also conclude that, while the Court of Appeal correctly rejected defendant's statute of limitations claim, equitable considerations may guide the court in fashioning the appropriate remedy in a UCL action.

[2]Cortez asks that the court take judicial notice of the 1994 action, *Facet Enterprises v. Servodyne Corporation* (Super. Ct. Sonoma County, 1994, No. 209417), in which Purolator seeks equitable indemnity for any losses it might suffer in the instant case. Purolator opposes the request, advising that the action is on file in the Sonoma County Superior Court and asserting (correctly) that the action is irrelevant to the issues in this case. The request is denied for that reason.

Cortez also asks that we take judicial notice of legislative rejection of a proposed one-year statute of limitation when section 17208 was adopted. We need not consider that legislative history as the statute is not ambiguous. We nonetheless grant the request.

Amicus curiae United Services Automobile Association requests judicial notice of the amicus curiae brief addressing the due process issues that it filed in *Kraus.* This request is also granted.

Amicus curiae State Farm Mutual Automobile Insurance Company asks that we take judicial notice of what it describes as a summary of relevant provisions of legislative amendments to the UCL. This "summary" is a document prepared by State Farm and is not subject to judicial notice. Amicus curiae also asks that we take judicial notice of the actual text of the amendments, attaching photocopies of parts of West's and Deering's annotated codes in which the code sections and history appear. Judicial notice of these materials is unnecessary. Finally, State Farm asks that we take judicial notice of two articles from the January and July 1933 issues of *Western Advertising* magazine, which it asserts may appropriately be judicially noticed as legislative history. Inasmuch as there is no indication that these articles were considered by the Legislature, judicial notice for that purpose is not warranted. The request for judicial notice is therefore denied in its entirety.

[3]Section 17208: "Any action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued. . . ."

We shall, therefore, affirm the judgment of the Court of Appeal as modified to direct the trial court to proceed in conformity with these conclusions.

I

BACKGROUND

On November 2, 1993, plaintiff Rosalba Cortez filed an action "on behalf of herself and the general public" denominated a "COMPLAINT FOR RESTITUTION, PENALTIES, AND ATTORNEY'S FEES FOR FAILURE TO PAY OVERTIME WAGES. (Bus. & Prof. Code, § 17200; Lab. Code, §§ 1194, 1198.)" The complaint alleged in substance that plaintiff had been a production worker at the Santa Rosa plant operated by defendant's predecessor in interest Servodyne Corporation from June 20, 1990, until May 11, 1993. Throughout that time plaintiff and other manufacturing workers at the plant worked four consecutive 10-hour or longer days per week. The first cause of action, "Unfair Business Practices - Failure to Pay Overtime," alleged that an applicable Industrial Welfare Commission wage order mandated payment of overtime of one and one-half the regular rate of pay for hours worked in excess of eight hours in a workday and double the rate of pay for hours worked in excess of 12 hours a day, and that she and the other production workers suffered a loss of wages in the amount of that overtime pay that was not paid to them. This cause of action also alleged that defendant failed to pay overtime wages promptly on termination of the employees as mandated by Labor Code section 203. These omissions were alleged to constitute an unfair business practice proscribed by section 17200.[4]

The second cause of action, "Failure to Pay Overtime," apparently one under Labor Code section 1194,[5] alleged that defendant had failed to pay overtime wages to plaintiff, and sought both those wages and a Labor Code section 203[6] penalty for failure to pay those wages at the time of her termination.

---

[4]Section 17200: "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."

[5]Labor Code section 1194: "(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

[6]At the time of this action Labor Code section 203 provided: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall

Plaintiff sought restitution to her and the other employees of the unpaid overtime pursuant to section 17203, with interest, and waiting time penalties for the alleged violations of Labor Code section 203. She also sought injunctive relief in the form of an order requiring defendant to give notice to persons to whom restitution was owing of the means by which to file for restitution, the disgorgement of unpaid overtime wages which could not be restored directly to the persons to whom they were owed, attorney fees, and costs of suit. As an affirmative defense, Purolator asserted the failure of plaintiff to bring the action as a class action, but did not raise that issue again until it moved unsuccessfully to strike the first cause of action.

Following a nonjury trial the court found that defendant had failed to meet its burden of demonstrating that it was exempt from the applicable wage order by virtue of an employee ratification of the four-day 10-hour work-week. The court therefore awarded plaintiff the overtime pay, interest, and penalty she sought on her own behalf. It denied the requested injunction, however, finding that defendant had believed in good faith it was exempt and had immediately abandoned the four-day schedule when it learned otherwise.[7] There being no threat of a repeated violation, an injunction was not warranted. The court then ruled that it was without power to order restitution on behalf of other, absent, employees because that relief could only be ancillary to injunctive relief. Judgment was entered accordingly. Plaintiff appealed from the judgment insofar as it denied relief on her UCL cause of action on behalf of other employees. Defendant appealed from the judgment insofar as it granted relief to plaintiff on her individual cause of action.

After the superior court judgment was rendered, but before the appeal was heard, this court held, in *ABC Internat. Traders, Inc. v. Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1271 [61 Cal.Rptr.2d 112, 931 P.2d 290] (*ABC Internat. Traders*), that section 17203 authorizes an order for restitution regardless of whether an injunction to prohibit future violations issues. Defendant acknowledged that the trial court's basis for denying relief to plaintiff on the UCL cause of action was inconsistent with *ABC Internat.*

---

continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but such wages shall not continue for more than 30 days. . . . [¶] Suit may be filed for such penalties at any time before the expiration of the statute of limitations on an action for the wages from which the penalties arise." (Stats. 1975, ch. 43, § 1, p. 75.)

[7]Evidence was offered that the 10-hour four-day practice was in place when defendant Purolator acquired the plant from Servodyne in 1988. While there was also evidence that the employees had been polled and were in favor of changing to the 10-hour four-day week when this action was filed, no written record of employee ratification of the work hours could be located.

*Traders.* As pertinent here, however, it argued that the judgment denying relief should be affirmed nonetheless because plaintiff lacked standing to seek restitution on behalf of the other employees and a judgment ordering payment of the unpaid overtime wages would award damages, not restitution.

The Court of Appeal assumed that Purolator raised the class certification issue in a timely manner. Relying on *Bronco Wine Co. v. Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699 [262 Cal.Rptr. 899], defendant argued in support of its standing claim that the action had to be brought as a class action. The Court of Appeal rejected that argument. It held that no due process concerns were implicated by use of the UCL procedure in this case because the trial court had before it the identity of all the workers, the hours worked, wages paid, and the amount of overtime paid to them. Purolator had the opportunity to offer evidence on who was owed backpay and was not denied the opportunity to be heard. Since the statute of limitations had run, there was no possibility that nonparties would pursue their own remedies against Purolator. For that reason, and because Purolator failed to demonstrate that a class action would have been advantageous, the trial court did not err in refusing to require a class action.

Defendant's argument that unpaid wages are damages that are not available in a UCL action was also rejected. The Court of Appeal majority reasoned that plaintiff was not seeking compensation for an injury the employees had sustained, which would have constituted damages. She was claiming that defendant profited from breaking the law, and sought disgorgement of the unlawfully obtained benefit. The amount of unpaid wages was simply the measure of the wrongful benefit to the employer, not damages. Because disgorgement would restore the employees to the position in which they would have been were it not for the employer's illegal conduct, the remedy was equitable in nature and recoverable under section 17203 in a UCL action. The court declined to apply *Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273 [67 Cal.Rptr.2d 621], or *Tippett v. Terich* (1995) 37 Cal.App.4th 1517, 1537 [44 Cal.Rptr.2d 862], both of which held that unpaid wages are damages that are not recoverable in a section 17200 action. Neither opinion, this Court of Appeal majority explained, provided any analysis to support the conclusion that unpaid wages may not be recovered in a UCL action. The conclusion, the Court of Appeal reasoned, conflicted with federal authority (*Teamsters v. Terry* (1990) 494 U.S. 558, 570 [110 S.Ct. 1339, 1347, 108 L.Ed.2d 519])

which held that a remedy is not solely a legal remedy simply because a monetary award is sought.[8]

Concurring reluctantly in the majority opinion, Acting Presiding Justice Haerle expressed concern that the court had departed from the traditional distinction between restitution and damages. He concurred nonetheless in the belief that this court had expanded the concept of restitution in *ABC Internat. Traders*.

The Court of Appeal therefore reversed the judgment of the superior court insofar as it denied relief on the UCL cause of action. This court granted defendant's petition for review to consider defendant's claims that (1) an award of restitution to persons who are not parties to the action in a representative UCL action by a private individual is constitutionally impermissible unless the action is certified as a class action, and (2) that a UCL judgment for disgorgement of unpaid wages awards damages, not restitution, and for that reason is not authorized by section 17203.

Our decision in *Kraus, supra*, 23 Cal.4th 116, is dispositive of defendant's first claim. Fluid recovery is not authorized in a UCL action that is not certified as a class action. For that reason the trial court may not make an order for disgorgement of all benefits defendant may have received from failing to pay overtime wages. It may only order restitution to persons from whom money or property has been unfairly or unlawfully obtained. Thus, if wages are property subject to a UCL restitutionary order, the court may order payment to the employees of any overtime pay they did not receive during the applicable time period. We therefore address defendant's arguments that an award of backpay is not a monetary remedy authorized by the UCL, the statute of limitations issue, and the equitable defenses question.

---

[8]The question in *Teamsters v. Terry, supra*, 494 U.S. 558, was whether plaintiffs, who sought compensatory damages for lost wages and health benefits, in a duty of fair representation suit against a union, were entitled to a jury trial. The court held that compensatory damages are legal relief, that although damages may be equitable when they are restitutionary in an action for disgorgement of improper profits the relief sought in that case was not restitutionary because the backpay was not money wrongfully held *by the union*, and that Congress had not made backpay a form of equitable relief as it had done under title VII of the Civil Rights Act of 1964. (42 U.S.C. § 2000e et seq.) In reaching its conclusion that the plaintiffs sought a legal remedy, the court said in passing: "This Court has not . . . held that 'any award of monetary relief must *necessarily* be "legal" relief.' " (494 U.S. at p. 570 [110 S.Ct. at p. 1342].)

The question in this case is not a Seventh Amendment issue or the abstract question of whether legal or equitable relief is sought, however. The question is whether an order awarding unpaid wages is authorized by the UCL.

## II

### DISCUSSION

A. *Unlawfully withheld wages may be recovered as restitution in a UCL action.*

Section 17203, under the authority of which a restitutionary order may be made, provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. *The court may make such orders or judgments*, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or *as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.*" (Italics added.)

A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices. It is not an all-purpose substitute for a tort or contract action. "[D]amages are not available under section 17203. (*Dean Witter Reynolds, Inc.* v. *Superior Court* (1989) 211 Cal.App.3d 758, 774 [259 Cal.Rptr. 789]; *Industrial Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1093, 1095-1097 [257 Cal.Rptr. 655]; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 95, p. 776; see also *Chern* v. *Bank of America* (1976) 15 Cal.3d 866, 875 [127 Cal.Rptr. 110, 544 P.2d 1310] [interpreting the nearly identical language of section 17535].)" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545] (*Bank of the West*).)

In *Dean Witter Reynolds, Inc.* v. *Superior Court, supra,* 211 Cal.App.3d 758, 774, on which *Bank of the West* relied in part, the Court of Appeal, after considering the history of the amendment to section 17535, explained its conclusion that compensatory damages are not available in a UCL action: "We believe this interpretation is consistent with the legislative history of congruent 1972 amendments to the false advertising law. Both Senate and Assembly sources indicate that the Legislature was concerned to affirm the 'general equity power' of the courts, particularly the power to order restitution. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 1763 (1972 Reg. Sess.) May 1, 1972; see Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1763 (1972 Reg. Sess.) undated.) The exclusion of claims for compensatory damages is also consistent with the overarching legislative concern to provide a *streamlined* procedure for the prevention of ongoing or

threatened acts of unfair competition. To permit individual claims for compensatory damages to be pursued as part of such a procedure would tend to thwart this objective by requiring the court to deal with a variety of damage issues of a higher order of complexity."

■ Plaintiff contends that a court of equity may award sums that should have been paid in wages as restitution. Defendant argues strenuously that unpaid wages in any form are damages and the court lacks power to award them in a UCL action.

Civil Code section 3281 defines "damages": "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Under this definition unpaid wages might be recovered as damages in a civil suit for breach of contract or one premised on fraud or misrepresentation theories. It does not follow, however, that when the failure to pay wages violates the Labor Code and therefore constitutes an unfair business practice the wages owed may not be recovered as restitution in a UCL action.

"Damages," as that term is used to describe monetary awards, may include a restitutionary element, but when the concepts overlap, the latter is easily identifiable. Damages for fraud are an example. In a fraud action the court may award as damages money fraudulently taken from the plaintiff. Civil Code section 3343, subdivision (a), provides: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received, together with any additional damage arising from the particular transaction . . . ." Thus, while the award of damages may be greater than the sum fraudulently acquired from the plaintiff, the award includes an element of restitution—the return of the excess of what the plaintiff gave the defendant over the value of what the plaintiff received. To that extent the award of damages literally includes restitution. By contrast, a damages award in a negligence action in tort may include monetary compensation for lost wages, pain and suffering, physical injury, and property damage. (Civ. Code, § 3333.) That damage award would not include an element of restitution.

As Justice Haerle observed, this court has held that wrongfully withheld salary payments are "damages" under Civil Code section 3281 et seq. (*Olson v. Cory* (1983) 35 Cal.3d 390, 402 [197 Cal.Rptr. 843, 673 P.2d 720] [back salary and pension payments are damages on which Civ. Code, § 3287 authorizes interest]; *Sanders v. City of Los Angeles* (1970) 3 Cal.3d 252,

262-263 [90 Cal.Rptr. 169, 475 P.2d 201] [action to recover retroactive pay increases is action for damages within meaning of Civ. Code, § 3287]; *Benson v. City of Los Angeles* (1963) 60 Cal.2d 355, 365-366 [33 Cal.Rptr. 257, 384 P.2d 649] [pension benefits sought in action for breach of contract are damages on which prejudgment interest is payable under Civ. Code, § 3287].) None of those decisions arose out of a UCL action, however. Whether those payments might also constitute restitution or whether the court could order such payment in the exercise of its equitable power in a UCL action was not in issue.

Both *Californians for Population Stabilization v. Hewlett-Packard Co.*, *supra*, 58 Cal.App.4th 273, and *Tippett v. Terich*, *supra*, 37 Cal.App.4th 1517, did consider UCL issues, and each concluded that unpaid wages may not be recovered in a UCL action. In *Californians for Population Stabilization v. Hewlett-Packard Co.*, the question was whether attorney fees could be awarded to counsel for defendant, the prevailing party in the UCL action, under Labor Code section 218.5, which authorizes fees in actions brought for nonpayment of wages. The court concluded that fees were not available because the action was for unfair competition and did not seek unpaid wages or benefits. The court then stated: "Indeed, unpaid wages are economic damages which are unavailable in a section 17200 action. (*Heller* v. *Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 45 [32 Cal.Rptr.2d 200, 876 P.2d 999]; *Bank of the West* v. *Superior Court*[, *supra*,] 2 Cal.4th 1254, 1266.)" (*Californians for Population Stabilization v. Hewlett-Packard Co.*, *supra*, 58 Cal.App.4th at p. 295.) In *Tippett v. Terich*, *supra*, 37 Cal.App.4th 1517, the court held that a UCL action was not available to a plaintiff who sought to compel payment of prevailing wages. "The cause of action does not support a claim for damages based on the difference between the wages paid and the prevailing wage. (*Bank of the West* v. *Superior Court, supra*, 2 Cal.4th 1254, 1266; *People* v. *Thomas Shelton Powers, M.D., Inc.* (1992) 2 Cal.App.4th 330, 339-344 [3 Cal.Rptr.2d 34]; *Dean Witter Reynolds, Inc.* v. *Superior Court*[, *supra*], 211 Cal.App.3d 758, 774 . . . .)" (*Id.* at p. 1537.)

*Bank of the West, supra*, 2 Cal.4th 1254, is not dispositive of the status of wages for purposes of UCL recovery. There we considered only whether a restitutionary UCL award for advertising injury due to unfair competition was a form of damages covered by the bank's comprehensive general liability insurance policy. We concluded that, while an award of damages for wrongful competition might be insurable, an award for a statutory violation, which could only be punitive or restitutionary, was not. (*Id.* at p. 1266.)

Plaintiff concedes that backpay awards may be "damages" under Civil Code section 3281. She contends that the court may, nonetheless, order

disgorgement of the amount owed in backpay as a "restitutionary remedy" under section 17203. She does not address the meaning of "restore to any person in interest any money or property" as used in section 17203, arguing in substance that whether unpaid wages are damages is irrelevant because there is no express provision in the UCL precluding application of UCL remedies to wage violations or to claims that might also support an action at law for damages. In plaintiff's view, the only question is whether restitution may be ordered because it meets the historic purpose of restitution in equity —to preclude unjust enrichment and, with disgorgement, as a favored remedy that is necessary to protect the public and carry out public policy.

The Court of Appeal majority reasoned that an order for disgorgement of the benefit defendant received by withholding overtime pay, a benefit measured by the amount of that pay, was not an award of damages. It was instead a restitutionary remedy that could be fashioned by the court in the exercise of its equitable power. It followed that disgorgement of benefits a defendant enjoyed as a result of acts of unfair competition was an available remedy. Plaintiff echoes that reasoning here, arguing that restitution and disgorgement are available remedies because they are within the court's equitable powers and are necessary to protect the public from unlawful business practices.[9]

The Court of Appeal and plaintiff assume that disgorgement of benefits is a remedy available in a representative UCL action. For that reason they have not considered whether section 17203 authorizes an order compelling a defendant to pay back wages as a restitutionary remedy. We conclude that it does and therefore need not consider whether the order might be proper under the UCL on a disgorgement of benefit theory.

Section 17203 authorizes the court to fashion remedies to prevent, deter, and compensate for unfair business practices. In addition to injunctions, it authorizes orders that are necessary to prevent practices that constitute unfair competition and to make "orders or judgments . . . as may be necessary to restore" to persons in interest any money or property acquired by unfair competition. (*Ibid.*)

---

[9]Identification of the laudable purpose of a statute alone is insufficient to construe the language of the statute. "To reason from the evils against which the statute is aimed in order to determine the scope of the statute while ignoring the language itself of the statute is to elevate substance over necessary form. The language in which the statute is cast confines and channels its purpose. Without due attention to the statutory terms, the statute becomes an open charter, a hunting license to be used where any prosecutor, plaintiff and judge sees an evil encompassed by the statutes' purpose. To the contrary, statutory interpretation must start with the words that define and cabin its laudable purposes." (*Delta v. Humane Soc. of U.S., Inc.* (9th Cir. 1995) 50 F.3d 710, 713.)

In *People v. Superior Court [(Jayhill)]* (1973) 9 Cal.3d 283, 286 [107 Cal.Rptr. 192, 507 P.2d 1400, 55 A.L.R.3d 191] (*Jayhill*), we held that the court had inherent equitable power to order restitution of money acquired through deceptive advertising. In both *Fletcher v. Security Pacific National Bank* (1979) 23 Cal.3d 442, 452 [153 Cal.Rptr. 28, 591 P.2d 51] (*Fletcher*), and *Jayhill*, the remedy we approved was literally restoration of money, the return of money acquired from an individual to that individual. In *Jayhill* the Attorney General sought an order that customers who were victims of a fraudulent sales presentation be afforded the opportunity to rescind an ensuing contract and obtain a refund. (*Jayhill*, *supra*, 9 Cal.3d at p. 286.) In *Fletcher* the court held that under section 17535,[10] the trial court had the power to order restitution of money, collected through excess interest charges, to the persons from whom it had been collected even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred. In that context we also said that "[a] court of equity may exercise its full range of powers 'in order to accomplish complete justice between the parties, restoring if necessary the *status quo ante* as nearly as may be achieved.' " (*Fletcher*, *supra*, 23 Cal.3d at p. 452.)

The object of the restitution order in each case was money that once had been in the possession of the person to whom it was to be restored. The status quo ante to be achieved by the restitution order was to again place the victim in possession of that money. Section 17535 thus confirmed the equitable power of the court, recognized in *Jayhill*, to order restoration of money to the victim. The power it confirms, however, is only a power to order the defendant " 'to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any [unlawful] practice.' " (*Jayhill*, *supra*, 9 Cal.3d at p. 287, fn. 1.)

We conclude that orders for payment of wages unlawfully withheld from an employee are also a restitutionary remedy authorized by section 17203. The employer has acquired the money to be paid by means of an unlawful practice that constitutes unfair competition as defined by section 17200. The employee is, quite obviously, a "person in interest" (§ 17203) to whom that

---

[10]Section 17535, which creates remedies for false and misleading advertising, provides in pertinent part: "The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful."

The restitutionary remedies of section 17203 and 17535, on which section 17203 is patterned, are identical and are construed in the same manner. (See *Bank of the West*, *supra*, 2 Cal.4th at p. 1266.)

money may be restored. The concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person. The commonly understood meaning of "restore" includes a return of property to a person from whom it was acquired (see Webster's New Internat. Dict. (2d ed. 1958) p. 2125), but earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice. An order that earned wages be paid is therefore a restitutionary remedy authorized by the UCL. The order is not one for payment of damages. The Court of Appeal concluded that a claim for wages owed is not a damage claim in holding that claims for wages earned but not paid are not damage claims subject to the claim filing requirement of Government Code section 905 in *Loehr v. Ventura County Community College Dist.* (1983) 147 Cal.App.3d 1071, 1080 [195 Cal.Rptr. 576] ("Earned but unpaid salary or wages are vested property rights, claims for which may not be properly characterized as actions for monetary damages."). Because equity regards that which ought to have been done as done (Civ. Code, § 3529), and thus recognizes equitable conversion (*Parr-Richmond Industrial Corp. v. Boyd* (1954) 43 Cal.2d 157, 165-166 [272 P.2d 16]), we also conclude that unlawfully withheld wages are property of the employee within the contemplation of the UCL. Our conclusion that these wages may be the subject of a restitutionary order under section 17203 is consistent with our recognition in *Walnut Creek Manor v. Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 263 [284 Cal.Rptr. 718, 814 P.2d 704], that restitutionary awards encompass quantifiable sums one person owes to another, and with that of the United States Supreme Court in *Curtis v. Loether* (1974) 415 U.S. 189, 197 [94 S.Ct. 1005, 1010, 39 L.Ed.2d 260], that backpay may be a form of restitution.

We are satisfied therefore, that an order that a business pay to an employee wages unlawfully withheld is consistent with the legislative intent underlying the authorization in section 17203 for orders necessary to restore to a person in interest money or property acquired by means of an unfair business practice.

B. *Statute of limitations.*

Section 17208 is clear. It provides that "[a]ny action to enforce *any* cause of action under this chapter shall be commenced within four years after the cause of action accrued." (Italics added.) We recognize that any business act or practice that violates the Labor Code through failure to pay wages is, by definition (§ 17200), an unfair business practice. It follows that an action to

recover wages that might be barred if brought pursuant to Labor Code section 1194 still may be pursued as a UCL action seeking restitution pursuant to section 17203 if the failure to pay constitutes a business practice. Nonetheless, the language of section 17208 admits of no exceptions. *Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section.

When statutory language is clear, judicial construction is neither necessary nor proper. (*Diamond Multimedia Systems, Inc. v. Superior Court* (1999) 19 Cal.4th 1036, 1047 [80 Cal.Rptr.2d 828, 968 P.2d 539].) We therefore reject defendant's claim that the shorter periods of limitation applicable to contractual or statutory wage claims govern a UCL action based on failure to pay wages.

C. *Equitable defenses.*

Defendant argues that, inasmuch as actions under the UCL are actions in equity (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 112 [101 Cal.Rptr. 745, 496 P.2d 817]; *Dean Witter Reynolds, Inc. v. Superior Court, supra,* 211 Cal.App.3d at p. 774), the relief available under section 17203 is purely equitable. Therefore, determination of the appropriate remedy is left to the sound discretion of the trial court in the exercise of that court's power to grant equitable relief. That being so, Purolator contends, the court not only may, but must, consider its equitable defenses, including its defenses of laches, good faith, waiver, and estoppel in deciding whether to grant the relief sought by plaintiff. While we express no opinion as to the merits of any equitable claims asserted by defendant, we agree that equitable considerations may enter into the court's disposition of a UCL action.

The Court of Appeal held, however, that because willful violation of a statute imposes strict liability, Purolator is limited to the defenses set forth in the Labor Code, which do not include equitable defenses. (*Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487, 1492 [257 Cal.Rptr. 924].) We agree that equitable defenses may not be asserted to wholly defeat a UCL claim since such claims arise out of unlawful conduct. It does not follow, however, that equitable considerations may not guide the court's discretion in fashioning the equitable remedies authorized by section 17203. A UCL action is independent of a statutory claim for back wages. (*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 572-573 [71 Cal.Rptr.2d 731, 950 P.2d 1086].) UCL remedies are cumulative to remedies available under other laws (§ 17205) and, as section 17203 indicates, have an independent purpose—deterrence of and restitution for unfair business practices. (*Bank of the West, supra,* 2 Cal.4th at p. 1267.) Therefore, what

would otherwise be equitable defenses may be considered by the court when the court exercises its discretion over which, if any, remedies authorized by section 17203 should be awarded.

The court's discretion is very broad. Section 17203 does not mandate restitutionary or injunctive relief when an unfair business practice has been shown. Rather, it provides that the court "*may* make such orders or judgments . . . as may be necessary to prevent the use or employment . . . of any practice which constitutes unfair competition . . . or as may be necessary to restore . . . money or property." (*Ibid.*) That is, as our cases confirm, a grant of broad equitable power. A court cannot properly exercise an equitable power without consideration of the equities on both sides of a dispute. This principle of equity jurisprudence has been applied in a variety of contexts in which the court is called upon to exercise equitable power. In *Tustin Community Hospital, Inc. v. Santa Ana Community Hospital Assn.* (1979) 89 Cal.App.3d 889 [153 Cal.Rptr. 76], the court held that the court must consider laches when deciding whether to grant injunctive relief to prohibit an alleged trademark infringement. There the court explained: "We are satisfied that the better view is that in all such cases the court should weigh the competing equities which bear on the issue of delay and should then grant or deny injunctive relief depending on the overall balance of those equities." (*Id.* at p. 903; see also *California Western School of Law v. California Western University* (1981) 125 Cal.App.3d 1002 [178 Cal.Rptr. 685].) We reached the same conclusion in *In re Marriage of Park* (1980) 27 Cal.3d 337, 345 [165 Cal.Rptr. 792, 612 P.2d 882], where we held that "a motion to vacate a judgment should not be granted where it is shown that the party requesting equitable relief has been guilty of inexcusable neglect or that laches should attach."

More recently, in an action seeking payment of back spousal support, the Court of Appeal explained the basis for recognizing this equitable defense: "[I]t is axiomatic that one who seeks equity must be willing to do equity. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 453 [61 Cal.Rptr.2d 707].) . . . This maxim stems from the paramount principle that equity is, peculiarly, a forum of conscience. (*Couts v. Cornell* (1905) 147 Cal. 560, 563 [82 P. 194].)" (*In re Marriage of Plescia* (1997) 59 Cal.App.4th 252, 257-258 [69 Cal.Rptr.2d 120].) Equitable estoppel also may be asserted when equitable relief is sought. (See generally 11 Witkin, Summary of Cal. Law (9th ed. 1990) Equity, § 176, p. 857 et seq.; cf. *Albermarle Paper Co. v. Moody* (1975) 422 U.S. 405, 424 [95 S.Ct. 2362, 2374, 45 L.Ed.2d 280] [court may consider belated, inconsistent conduct of plaintiffs seeking backpay under tit. VII (42 U.S.C. § 2000e et seq.)].)

Therefore, in addition to those defenses which might be asserted to a charge of violation of the statute that underlies a UCL action, a UCL

defendant may assert equitable considerations. In deciding whether to grant the remedy or remedies sought by a UCL plaintiff, the court must permit the defendant to offer such considerations. In short, consideration of the equities between the parties is necessary to ensure an equitable result.

Normally, however, the plaintiff need not show that a UCL defendant intended to injure anyone through its unfair or unlawful conduct. The UCL imposes strict liability when property or monetary losses are occasioned by conduct that constitutes an unfair business practice. (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th at 1093, 1102 [53 Cal.Rptr.2d 229].) Therefore, while we cannot foresee how any equitable consideration could defeat a claim for unpaid wages, we cannot foreclose the possibility that defendant has evidence that the trial court might consider relevant when, on remand, it fashions a remedy for plaintiff's unfair business practice.

## III

### DISPOSITION

The judgment of the Court of Appeal is affirmed and the matter is remanded for further proceedings consistent with this opinion.

George, C. J., Mosk, J., Kennard, J., Chin, J., and Brown, J., concurred.

**WERDEGAR, J.,** Concurring.—I agree with the majority that unlawfully withheld wages may be the subject of a remedial order under Business and Professions Code section 17203 because such wages are property of the employee within the contemplation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq. (hereafter UCL)). I also agree with the majority's analysis of the statute of limitations issue. Accordingly, I concur in the judgment insofar as it affirms the judgment of the Court of Appeal. Primarily for the reasons stated in my concurring and dissenting opinion in the companion case, *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 143 [96 Cal.Rptr.2d 485, 999 P.2d 718] (*Kraus*), however, I am unable to join in much of the majority's reasoning.

I note that the majority's references to our prior pronouncements barring damages in UCL actions and to the majority holding in *Kraus*, barring fluid recovery as a remedy in a UCL action not certified as a class action, are dicta in light of our conclusion that the remedial order in this case is authorized statutorily as a restorative award to parties in interest.

Moreover, while I agree with the majority that equitable considerations may, under Business and Professions Code section 17203, enter into a

court's consideration of the appropriate remedy for a UCL violation, I am concerned that the majority's explication of that principle may be misleading and provide inadequate guidance to trial courts that will be handling future UCL actions, in that it focuses solely on equitable "defenses" tending to favor defendants. (See maj. opn., *ante*, at pp. 179-181.) Most importantly, I would note that equitable considerations normally should not lead a trial court to reduce or eliminate a UCL restorative order when it is established that the defendant committed an unlawful practice, but the defendant claims that its violation was unintentional or committed in a good faith belief the action was lawful. Rather, in general, as between a person who is enriched as the result of his or her violation of the law, and a person intended to be protected by the law who is harmed by its violation, for the violator to retain the benefit would be unjust.