Filed 6/16/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| KIM LEE,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>LUXOTTICA RETAIL NORTH AMERICA, INC., et al.,<br><br>        Defendants and Respondents. | A157657<br><br>(San Francisco County Super. Ct. No. CGC17562793) |

Appellant Kim Lee, O.D., acting on behalf of a putative class of optometrists in California with independent optometry practices, brought suit against a competing chain of optical retailers.  He now appeals from a judgment sustaining without leave to amend a demurrer to his second amended complaint, which asserts a single cause of action under California's Unfair Competition Law (UCL) (Bus. and Prof. Code, § 17200 et seq.).

We hold that the only relief plaintiff requests against his competitors—compensation for lost market share—is not a remedy authorized by the UCL, because it does not constitute restitution, the only form of nonpunitive monetary recovery authorized under the UCL.  Simply put, compensation for expected but unearned future income to which the plaintiff has no legal entitlement is not recoverable as restitution under the UCL, regardless whether it is characterized as lost market share.  Lost profits are damages, not restitution, and are unavailable in a private action under the UCL.

1

Accordingly, the demurrer was properly sustained, and we will affirm the judgment.

## BACKGROUND

" 'Because "[t]his case comes to us after the sustaining of a general demurrer . . . , we accept as true all the material allegations of the complaint." ' " (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1141 (*Korea Supply*).)

Plaintiff Kim Lee, O.D., is a San Francisco optometrist who has operated his independent practice since 2002. In 2017, he commenced this action against two corporate affiliates operating a chain of optical retail stores in California that offer competing eyeglass products and optometry services: parent company Luxottica Retail North America, Inc., an Ohio corporation doing business in California under the name LensCrafters, and its wholly owned subsidiary, Eyexam of California, Inc.[1] The action was brought on behalf of a putative class of optometrists consisting of "All California doctors of optometry in practices independent of control by a retail chain optical store in California, and whose practices were located within 20 miles of a LensCrafters location between November 30, 2013 and September 1, 2015."

Lee's second amended complaint alleges that during this period, defendants operated the LensCrafters chain of stores in a manner that violated state laws regulating the practice of optometry and the dispensing of optical products, thereby constituting unfair and/or unlawful business practices in violation of the UCL.

---

[1] Unless otherwise specified, we will refer to these defendants jointly as LensCrafters.

He alleges that, as a result of these practices, the putative class members lost "market share" in retail sales based on allegations they had "vested interests in the Total Addressable Market of individuals who visited optometrists." In particular, he alleges "[s]tudies have shown that adults are, on average, willing to drive more than 20 miles for routine medical care" and that "[i]f patients had not been able to visit illegal optometry locations, a statistically significant and statistically ascertainable percentage of such patients would have instead visited at least one member of the Class within 20 miles of the illegal locations [operated by defendants that] such patients visited." Thus, he alleges that the putative class members "lost market share in their optical retail sales" due to defendants' conduct which, conversely, "improperly increase[ed] their market share of optical product sales in California." He alleges that "during the Class Period there were approximately 150 LensCrafters locations throughout California which serviced customers who would have gone to different optometrist[s] if they had not visited LensCrafters, creating a pool of funds in which every legally operating optometrist in the area had a vested interest," and that "[m]embers of the class are each entitled to their fair share of their cumulative vested interest." The putative class members allegedly "lost their vested interest in the pool of funds that were spent on illegal optometry services and illegal retail sales of optical goods, which would have instead been spent in a legal location."

The only remedy prayed for is a judgment "[o]rdering the restitution/disgorgement of all sums obtained by Defendants through improper taking of market share from Class Members through violations of the UCL."

LensCrafters demurred to the second amended complaint, challenging both the remedy sought and the class allegations.[2]  The trial court sustained the demurer without leave to amend, on the ground that plaintiff failed to allege an entitlement to restitution under the UCL.  Judgment was entered, and plaintiff timely appealed.

## DISCUSSION

"A demurrer is properly sustained when '[t]he pleading does not state facts sufficient to constitute a cause of action.'  (Code Civ. Proc., § 430.10, subd. (e).)  On appeal, a resulting judgment of dismissal is reviewed independently.  [Citation.]  ' " '[W]e accept as true all the material allegations of the complaint' " ' [citation], but do not 'assume the truth of contentions, deductions or conclusions of law.' "  (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)

The UCL proscribes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising," and any act prohibited by California's false advertising law.  (Bus. & Prof. Code, § 17200; see also *id.*, § 17500.)  Its purpose " 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services' [citation][,] . . .  [and to] 'provide[] an equitable means through which both public prosecutors and private individuals can bring suit to prevent *unfair business practices* and restore money or property to victims of these practices.' "  (*Solus Industrial Innovations, LLC v. Superior Court* (2018) 4 Cal.5th 316, 340.)  "By prohibiting unlawful business practices, ' "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.' "

[2]  The trial court had previously sustained defendants' demurrer to the first amended complaint with leave to amend.

4

(*De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 980.) Actions may be brought by the Attorney General or other specified public officials, and "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."[3] (Bus. & Prof. Code, § 17204.)

"While the scope of conduct covered by the UCL is broad, its remedies are limited." (*Korea Supply, supra,* 29 Cal.4th at p. 1144.) Injunctive relief is the primary form of relief available. (*McGill v. Citibank, N.A.* (2017) 2 Cal.5th 945, 954; Bus. & Prof. Code, § 17203.) In public enforcement actions, civil penalties also may be assessed. (See Bus. & Prof. Code, § 17206.) But in a private action, "[t]he only monetary remedy available . . . is restitution." (*Clark v. Superior Court* (2010) 50 Cal.4th 605, 613; see Bus. & Prof. Code, § 17203 [court may "make such orders and judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition"].) Damages are not recoverable. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266.) In short, "under the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" (*Korea Supply*, at p. 1144.)

Here, plaintiff contends the demurrer was improperly sustained because lost market share is a restitutionary remedy authorized by the UCL. We do not agree.

Although the precise question here is one of first impression in California, it is squarely controlled by our Supreme Court's 2003 decision in

---

[3] The injury in fact requirement was added by the electorate in 2004 through the passage of Proposition 64, which also eliminated the ability of private plaintiffs to bring a representative action on behalf of the general public without meeting the requirements for a class action. (See *Arias v. Superior Court* (2009) 46 Cal.4th 969, 977-980.)

*Korea Supply*, *supra*, 29 Cal.4th 1334, which addressed "what claims and remedies may be pursued by a plaintiff who alleges a lost business opportunity due to the unfair practices of a competitor." (*Id*. at p. 1140.)

In *Korea Supply*, the plaintiff was an agent representing the supplier of military equipment in the supplier's bid to procure a lucrative military contract with a foreign government. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1141.) If the bid was successful, the plaintiff stood to earn a $30 million commission. (*Ibid*.) The contract was awarded to a competitor, however. The agent then brought suit against the winning bidder under the UCL (and asserted related tort claims), alleging the contract had been procured by wrongful means (i.e., bribes and sexual favors). (*Korea Supply,* at pp. 1141-1142.) Its UCL claim sought disgorgement of all profits the winning bidder had realized under the winning contract. (*Korea Supply,* at p. 1142.) The trial court sustained a demurrer without leave to amend to the UCL claim on the ground it did not allege facts sufficient to state a cause of action. (*Korea Supply,* at pp. 1142-1143.) The appellate court reversed, but the Supreme Court ruled the demurrer to the UCL cause of action had been properly sustained because the plaintiff could not recover monetary relief under the UCL. (See *Korea Supply,* at pp. 1142, 1152.)

First, the Supreme Court held that non-restitutionary disgorgement of profits—that is, profits that are neither money a defendant took from the plaintiff nor funds in which the plaintiff has an ownership interest—is not an authorized remedy under the UCL in an individual action. (See *Korea Supply*, 29 Cal.4th at pp. 1140, 1144-1148, 1152.) It extended this principle from the rule already established in the context of representative suits brought under the UCL. (See *Korea Supply,* at pp. 1144-1145; *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 137, superseded by

6

statute on other grounds as stated in *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1000.) It also examined the statute's history and purpose, and found "nothing to indicate that the Legislature intended to authorize a court to order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits." (*Korea Supply,* at p. 1147.)

The court also found support in the text of Business and Professions code section 17203, the UCL's general remedial provision, concluding the UCL's monetary remedies are quite circumscribed despite the UCL's broad remedial purposes. The court explained, "the language of section 17203 is clear that the equitable powers of a court are to be used to 'prevent' practices that constitute unfair competition and to 'restore to any person in interest' any money or property acquired through unfair practices. ([Bus. & Prof. Code,] § 17203.) While the 'prevent' prong of [Business and Professions Code] section 17203 suggests that the Legislature considered deterrence of unfair practices to be an important goal, the fact that attorney fees and damages, including punitive damages, are not available under the UCL is clear evidence that deterrence by means of monetary penalties is not the act's sole objective. *A court cannot, under the equitable powers of section 17203, award whatever form of monetary relief it believes might deter unfair practices.* The fact that the 'restore' prong of section 17203 is the only reference to monetary penalties in this section indicates that the Legislature intended to limit the available monetary remedies under the act." (*Korea Supply, supra,* 29 Cal.4th at pp. 1147-1148, italics added.) Canvassing prior caselaw, the court concluded by "confirm[ing] what we have previously held: Under the UCL, an individual may recover profits unfairly obtained to the extent that

these profits represent *monies given to the defendant or benefits in which the plaintiff has an ownership interest.*"  (*Id*. at p. 1448, italics added.)

Judged by these standards, the court held that the plaintiff's requested remedy was not restitutionary.  (*Korea Supply*, *supra*, 29 Cal.4th at p. 1149.) "The object of restitution," it explained, "is to restore the status quo by returning to the plaintiff funds *in which he or she has an ownership interest.*" (*Ibid.,* italics added.)  There, however, plaintiff had no ownership interest in the funds it sought to disgorge.  (*Ibid*.)  First, the court explained, "it is clear that plaintiff is not seeking the return of money or property that was once in its possession," because "[plaintiff] has not given any money to [the winning bidder]; instead, it was from the [foreign country] that [defendant] received its profits."  (*Ibid*.)  Thus, "[a]ny award that plaintiff would recover from defendants would not be restitutionary as it would not replace any money or property that defendants took directly from plaintiff."  (*Ibid*.)

Second, citing and discussing *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163 (*Cortez*), the court acknowledged that restitution under the UCL is not limited to the recovery of money or property that was once in the plaintiff's possession but also encompasses the recovery of money or property in which the plaintiff has a "vested interest," but held plaintiff had no such interest.  (*Korea Supply*, *supra*, 29 Cal.4th at pp. 1149-1150.)  *Cortez* held that earned but unlawfully withheld wages are recoverable as a restitutionary remedy under the UCL, because the wages once earned are "as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a

8

person surrenders through an unfair business practice."[4] (*Cortez*, at pp. 177-178.)  Contrasting what it called an employee's "vested interest" in earned but unpaid wages (*Cortez*), *Korea Supply* held that plaintiff had no comparable vested interest in the receipt of its anticipated commission.  At most, its interest was only an " 'expectancy' " or a "contingent" one.  (*Korea Supply*, at p. 1149.)  The plaintiff only expected payment if its client was awarded the contract, and "[s]uch an attenuated expectancy cannot . . . be likened to 'property' converted by [defendant] that can now be the subject of a constructive trust," because the requested recovery "cannot be traced to any particular funds in [defendant's] possession."  (*Id*. at p. 1150.)  The court also called plaintiff's expectancy interest in the commission even "further attenuated," because, unlike in *Cortez*, it never anticipated payment directly from the defendant but from a third party (i.e., from its client).  (*Ibid*.)  "Unlike *Cortez*, then, the monetary relief requested by [plaintiff] does not represent a quantifiable sum owed by defendants to plaintiff."  (*Ibid*.)  For these reasons, the Supreme Court concluded plaintiff's claim was seeking non-restitutionary disgorgement.  (*Ibid*.)

*Korea Supply* reaffirmed that "the UCL 'is not an all-purpose substitute for a tort or contract action,' " and rejected the plaintiff's suggestion to limit the remedy to the amount it would have earned as a commission.  (*Korea Supply*, *supra*, 29 Cal.4th at pp. 1150-1151, quoting *Cortez*, *supra*, 23 Cal.4th at p. 173)  The Supreme Court observed that the remedy plaintiff sought "closely resembles a claim for damages, something that is not permitted" and, quoting a federal district court decision that dismissed a UCL claim brought

---

[4] *Cortez* found a property interest in that situation, because "equity regards that which ought to have been done as done (Civ. Code, § 3529), and thus recognizes equitable conversion."  (*Cortez, supra,* 23 Cal.4th at p. 178.)

against a direct competitor, noted that " '[c]ompensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims.' " (*Korea Supply,* at pp. 1150-1151, quoting *MAI Systems Corp. v. UIPS* (N.D. Cal. 1994) 856 F.Supp. 538, 542 (*MAI Systems*); see also *MAI Systems*, at p. 542 ["A restitutionary remedy would only be available to the victims of [defendant's] purportedly misleading [actions]—the allegedly overcharged customers—and not by [plaintiff's] competitors"].) From a public policy perspective, the court also expressed its concern that allowing monetary recovery on the theories advanced by plaintiff would enable plaintiffs to recover tort damages while "bypassing the burden of proving the elements of liability" under "traditional tort and contract claims"— "something the Legislature never intended." (*Korea Supply,* at p. 1151.)

Finally, the court explained that the decision did not leave the plaintiff or those affected by a defendant's unfair practices without a remedy. (*Korea Supply*, *supra*, 29 Cal.4th at p. 1152.) It noted that damages were potentially available under traditional tort law, injunctive relief was available under the UCL, and "[a]ctual direct victims of unfair competition may obtain restitution as well." (*Korea Supply,* at p. 1152.) Its decision "merely reaffirms the balance struck in this state's unfair competition law between broad liability and limited relief." (*Ibid*.)

There is no meaningful distinction between the remedy struck down as non-restitutionary in *Korea Supply* and the "lost market share" theory of recovery plaintiff asserts in this lawsuit. As in *Korea Supply*, plaintiff alleges that LensCrafters engaged in practices that caused him and the other putative class members to lose business. However one describes it (as "lost market share," loss of a business "opportunity," or lost profits), the only monetary relief that plaintiff seeks is lost income from sales that never took

10

place, because such sales allegedly were unlawfully diverted to defendants.[5] Yet *Korea Supply* stands unequivocally for the proposition that unearned income (there, commission from a single business transaction that failed to materialize) is not recoverable as restitution under the UCL—because the plaintiff has no ownership interest in it. It does not represent money the plaintiff ever parted with, nor does the plaintiff have any legally enforceable property interest in it, analogous to wages that have been *earned* but unlawfully withheld (*Cortez*). Indeed, as our Supreme Court recently reaffirmed in another context, where economic relationships have not "solidified into binding future promises" but are merely prospective, "[n]either party to such a relationship has a legal claim to continued relations with the other." (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1146-1147.) There is thus no sense in which plaintiff's interest in future income from his customer base is vested, as opposed to merely contingent. (See also *Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1402 [wages that have not been earned but are potentially recoverable as a statutory penalty cannot be recovered as restitution in an action under the UCL, because "[u]ntil awarded by a relevant body, employees have no . . . vested interest" in those funds].)

Plaintiff argues that *Korea Supply* is distinguishable because the case did not involve lost market share. Instead, he argues the putative class members here do have a "vested interest" in their share of the optical market, analogous to earned but unpaid wages, because plaintiff and the other class members "*earned* their share of the market by providing optometry services

---

[5] Plaintiff acknowledges this in his reply brief, where he asserts that "the market share taken by Defendants represents actual business transactions which [plaintiff] and the class *would have had* but for Defendants' UCL violation." (Italics added.)

11

and products to their customers, including those customers who would have been part of that market share but instead patronized Defendants as a result of their violation of the UCL." (Italics added.) This boils down to plaintiff's contention that *Korea Supply* involved only a "single transaction" whereas this case involves "thousands of actual business transactions taken from [plaintiff] and the class . . . which can be proven by statistical analysis." For multiple reasons, these distinctions are unavailing.

First, *Korea Supply* did involve lost market share. In that case, it was a market of one (i.e., the foreign government buyer). There is no reason to think the Supreme Court would have come out the other way had the competitor been alleged to have bribed its way into military contracts with two buyers, or three, or even thousands.[6]

More fundamentally, we cannot accept the proposition that a business has a *vested property right* in the share of the market that it occupies,

---

[6] In his reply brief, plaintiff cites authorities addressing the use of statistical evidence in a variety of contexts (see *Duran v U.S. Bank National Assn.* (2014) 59 Cal.4th 1, 39-41; *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1054 [conc. opn. of Werdegar, J.]), including to prove to the *amount* of restitution recoverable under the UCL in consumer class actions (see *Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1016-1017 [involving stipulation to use statistical sampling methodology], disapproved on another ground in *Raceway Ford Cases*, 2 Cal.5th 161, 180 (2016); *Walker v. Life Insurance Co. of Southwest* (C.D. Cal., July 31, 2018, No. CV1009198JVSRNBx) 2018 WL 3816716, at *8 [ruling on motion for class certification], affd. (9th Cir. 2020) 953 F.3d 624), and argues that "[t]he sufficiency of the statistical evidence to prove that Defendants unlawfully took the class's market share is a factual issue which cannot be resolved by demurrer." This misses the point. The issue here is not the methodology by which plaintiff hopes to prove either liability or the amount of lost sales. The question is whether plaintiff and the putative class members are entitled to recover *any* compensation for lost income as restitution under the UCL. None of these cited authorities have any bearing on that issue.

equivalent (plaintiff says) to an employee's vested property right in wages already earned.  That proposition, for which plaintiff cites no authority, not only would have serious implications far beyond the context of this dispute but is itself astonishingly anticompetitive.  It assumes that, at any arbitrary point forever fixed in time, customers have no right to do business wherever and with whomever they please and that competing businesses, including those operating legally, have no right to enter the market.[7]  That is the antithesis of free competition.

What plaintiff characterizes as a vested property interest in his share of the optical market, earned through developing his business, is somewhat akin to business goodwill.  (See Bus. & Prof. Code, § 14100 ["The 'good will' of a business is the expectation of continued public patronage"]; accord, *Baker v. Pratt* (1986) 176 Cal.App.3d 370, 380.)  Goodwill is an intangible asset that can be sold (see *NewLife Sciences, LLC v. Weinstock* (2011) 197 Cal.App.4th 676, 689, fn. 11; Bus. & Prof. Code, § 14102), and a form of property the impairment or destruction of which can be remedied through an award of damages.  (*Baker*, at pp. 380-381.)  The only California case of which we are aware that addresses the issue concludes that damages for harm to goodwill is not a restitutionary remedy.  (See *Citizens of Humanity, LLC v. Costco Wholesale Corp.* (2009) 171 Cal.App.4th 1, 22 [harm to plaintiff's goodwill "would not entitle [plaintiff] to restitution [under *Korea Supply*]," disapproved on another ground, *Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 337 (*Kwikset*)).[8]

---

[7]  Plaintiff makes no bones about this.  He repeatedly says in his briefing that the business LensCrafters allegedly diverted from the putative class members "belonged to" the class.

[8]  Here, plaintiff does not expressly allege that LensCrafters deprived him of his goodwill.  Rather, he alleges he and others were deprived of the

In addition, federal courts both before and after *Korea Supply* have consistently held that compensation for lost business is not recoverable in an action against a business competitor under the UCL. (See, e.g., *Ozeran v. Jacobs* (9th Cir. Feb. 18, 2020) 798 Fed.Appx. 120, 122-123 [allegations that competitor's unfair business practices diverted business from plaintiff to competitor held insufficient to state a claim under the UCL]; *MAI Systems, supra,* 856 F.Supp. at p. 542 ["A restitutionary remedy would only be available to the victims of [computer maker's] purportedly misleading contracts—the allegedly overcharged customers—and not to [computer maker's] competitors"]; *POM Wonderful LLC v. Coca Cola, Inc.* (C.D. Cal. 2010) 727 F. Supp.2d 849, 870 [" 'there is no reasonable definition of vested interest that would include market share' "], judg. vacated and remanded in part on other grounds (9th Cir. 2012) 679 F.3d 1170, 1178-1179; *Rimini Street, Inc. v. Oracle International Corp.* (D. Nev. 2020) 473 F.Supp.3d 1158, 1226; *Rosen v. Uber Technologies, Inc.* (N.D.Cal. 2016) 164 F.Supp.3d 1165, 1178; *AngioScore, Inc. v. TriReme Medical, LLC* (N.D. Cal. 2014) 70 F.Supp.3d 951, 962-963; *SkinMedica, Inc. v. Histogen Inc.* (S.D. Cal. 2012) 869 F.Supp.2d 1176, 1183-1187.) We agree. Simply put, lost business is a form of damages—it is not restitutionary. (See *Cacique, Inc. v. Robert Reiser & Co., Inc.* (9th Cir. 1999) 169 F.3d 619, 624 [competitor's sales and revenue data held irrelevant and not subject to discovery in UCL action that seeks to recover a "royalty" based on competitor's profitability, because "California law is clear" that damages are not recoverable under Bus. & Prof. Code, § 17200].)

_____

income they would have received had LensCrafters not competed with them in an unlawful manner.

Against the weight of this authority, plaintiff argues that it may seek restitution of its "lost market share" under *Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544 (*Higbee*), a case that addressed the standing requirements under the UCL. *Higbee* provides no support for plaintiff's novel bid to recover unearned income as restitution. *Higbee* held that the plaintiff's alleged loss of customers and revenue due to a competitor's allegedly unlawful business practices, as well as allegations he had been forced to lower his prices and increase advertising spending, which collectively was described as a "loss of market share," was sufficient to establish standing to sue. (*Id*. at pp. 555-556.) The appellate court did not address whether these allegations stated a claim for restitution (the plaintiff sought an injunction and "damages" (see *id*. at pp. 550-551)), and ineligibility for restitution does not defeat standing under the UCL. (*Kwikset, supra*, 51 Cal.4th at p. 337.) "[T]he standards for establishing standing under [Business and Professions Code] section 17204 and eligibility for restitution under section 17203 are wholly distinct." (*Id*. at pp. 335-336.) *Higbee* is inapposite.

Plaintiff also argues that awarding compensation for business that has been diverted by a competitor is consistent with the Legislature's intent to curb unlawful or unfair business practices. But the court's equitable powers do not permit it to "award whatever form of monetary relief it believes might deter unfair practices." (*Korea Supply, supra*, 29 Cal.4th at p. 1148.) And although "[a]ll remedies have some incidental deterrent effect[,] . . . [¶] . . . [¶] . . . [r]estitution is not a punitive remedy." (*Clark v. Superior Court, supra*, 50 Cal.4th at p. 614.) That said, as the Supreme Court recognized in *Korea Supply* (see *id*. at p. 1152), denying compensation for lost business to plaintiffs allegedly harmed by a competitor's unlawful or unfair business

practices will by no means leave anyone without a remedy. "Injunctions are 'the primary form of relief available under the UCL to protect consumers from unfair business practices,' while restitution is a type of 'ancillary relief.'" (*Kwikset*, *supra*, 51 Cal.4th at p. 337.) Plaintiff could have brought suit to enjoin the unlawful practices at the time they were taking place. In addition, consumers, who are the direct victims of LensCrafters' allegedly unlawful business practices, may potentially seek restitution. (See *Korea Supply*, at pp. 1151-1152, 1153.) Plaintiff may not.

Simply put, regardless of label ("lost market share," "lost business opportunity" or "lost profits"), a plaintiff cannot recover anticipated but unearned, future income under the UCL in the guise of restitution because, absent a legally enforceable right to that stream of future income, the plaintiff lacks an ownership interest in it and thus there is nothing to "restore." To be clear, we do not reach the question whether a contractual guarantee (or some other source of legally binding entitlement) *would* create a vested property interest sufficient to recover unearned income under the UCL, because no such interest has been alleged here and that issue is not before us. We hold only that in the absence of any legal entitlement to future income, anticipated but unearned future income is not recoverable in a private action under the UCL even when it is characterized as "lost market share."

In light of our conclusion it is unnecessary to address the parties' contentions about the adequacy of the class allegations.

## DISPOSITION

The judgment is affirmed. Respondents shall recover their costs.

16

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

MILLER, J.

*Lee v. Luxottica Retail North America, Inc.* (A157657)

Trial Court:San Francisco County Superior Court

Trial Judge:        Hon. Mary E. Wiss

Counsel:

Quadra & Coll, James A. Quadra, Rebecca Coll, and Robert Sanford for Plaintiff and Appellant.

Crowell & Moring, Emily T. Kuwahara and Gregory D. Call for Defendants and Respondents.