[No. A101294. First Dist., Div. One. Feb. 24, 2004.]

JONATHAN FRIEMAN et al., Plaintiffs and Appellants, v.
SAN RAFAEL ROCK QUARRY, INC., Defendant and Respondent.

## COUNSEL

Law Offices of Patricia E. Henle, Patricia E. Henle; Alan R. Brayton, Gilbert L. Purcell, Lloyd F. LeRoy, David L. Fiol, Brayton Purcell and Peter Fredman for Plaintiffs and Appellants.

Taylor & Wiley, John M. Taylor and Derek P. Cole for Defendant and Respondent.

## OPINION

**MARCHIANO, P. J.**—Jonathan Frieman and Jan Brice appeal from the denial of their motion for class certification in their action against defendant San Rafael Rock Quarry, Inc. (the Quarry) alleging nuisance and violations of the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.).[1] Plaintiffs seek nonrestitutionary disgorgement of profits under the guise of a class action. We agree with the trial court's determination that plaintiffs failed to establish that a class action would be substantially beneficial and affirm.

### BACKGROUND

Plaintiffs Jonathan Frieman and Jan Brice are individuals who reside near the Quarry.[2] They filed a complaint, on behalf of themselves and all those similarly situated alleging that since 1982, the Quarry has operated in violation of multiple zoning, mining, environmental and health, and safety regulations, codes and statutes.

According to the complaint and attached documents, the Quarry has been operating on the tip of the Point San Pedro Peninsula, adjacent to the City of San Rafael since approximately 1900. In 1982, the former owners of the

---

[1] Except where otherwise specified, all statutory references are to the Business and Professions Code. We refer to sections 17200 through 17209 as the unfair competition law (UCL). (*ABC Internat. Traders, Inc. v. Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1252 [61 Cal.Rptr.2d 112, 931 P.2d 290].)

[2] The original plaintiffs included Frieman, Brice, Mario DiPalma, now deceased, and Point San Pedro Road Coalition, a nonprofit corporation. Point San Pedro Road Coalition filed an abandonment of its appeal and was dismissed on April 3, 2003. The remaining plaintiffs, Frieman and Brice have confirmed that they remain willing to serve as class representative if class certification is ordered.

Quarry submitted an amended reclamation plan pursuant to the Surface Mining and Reclamation Act of 1975. (Pub. Resources Code, §§ 2710, 2777.) In 1982, based on the amended plan, Marin County adopted a zoning ordinance rezoning the property. Since that time, according to the allegations of the complaint, the Quarry has operated as a lawful nonconforming use that could not be enlarged or increased.

In 1986, Dutra Construction Company bought the Quarry and increased the scope of its operations. In 1996, the Bay Area Air Quality Management District issued a violation letter to the Quarry referencing a multi-million-dollar expansion that was accomplished without permits. In 2000, the Marin County Department of Public Works issued a notice of noncompliance with the 1982 amended reclamation plan, identifying multiple violations, including increasing the depth of the mining pit, ignoring the identified date for termination of mining, and a significant increase in truck traffic. Subsequent investigations by Marin County and the City of San Rafael revealed additional municipal code violations by the Quarry including construction without building permits of several structures and violation of air quality standards.

In June of 2001, the Marin County Grand Jury issued its report regarding the county government's handling of complaints about the Quarry.[3] The report was critical of the county's inaction in response to what it termed as a long history of public complaints about dust, noise, blasting and truck traffic. A part of the grand jury's list of recommended actions included a recommendation that the district attorney institute a nuisance abatement action against the Quarry.

Plaintiffs filed their first amended complaint against the Quarry for damages, injunction and restitution on January 17, 2002. The first cause of action of the complaint alleged that the substantial expansion of the Quarry's activities in violation of various state and local laws and regulations is an unlawful business practice under the UCL. The second cause of action alleged that the same activity constitutes a public nuisance within the meaning of Civil Code section 3479.[4]

The Quarry answered the complaint, denied the allegations and alleged that it had operated as a grandfathered vested nonconforming use since 1972, with

---

[3] A copy of the grand jury report was attached as an exhibit to the complaint.

[4] Civil Code section 3479 provides: "Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance."

no limits on its operations. In April of 2002, the complaint was consolidated for purposes of discovery and pretrial determinations with actions brought by the State of California, the County of Marin and an individual plaintiff against the Quarry.

On July 2, 2002, plaintiffs in this case filed a motion for class certification. A declaration filed in support of the motion for certification stated that the Quarry profited from its noncompliance with the law by increasing the depth of its mine pit, increasing the amount of ore removed by truck rather than barge, and by constructing office space without permits. In their motion for certification, plaintiffs described "Class A," based on the UCL, as follows: "all persons who are or have been legal residents for at least 30 days' duration within Marin County, California, and reside (or did reside) in an area within five square miles of the [Quarry], and Point San Pedro Road since September 25, 1998. This class would share equally in the disgorgement of profits that [the Quarry] realized from its non-compliance with the 1982 Marin County Amended Reclamation Plan and violations of various zoning and Health and Safety Code regulations. This equitable remedy is sought under [section 17200]." Class B had a similar description, but sought: "non-economic and economic damages based upon allegations of public nuisance for annoyance, inconvenience, and discomfort."

On November 18, 2002, following briefing and argument, the trial court issued its order denying the motion. As to Class A, the trial court's order stated several reasons for the denial of class certification. First, the court found that plaintiffs failed to show that the class approach would be beneficial. The second reason was that the proposed class members did not have claims for restitution within the meaning of *Cortez v. Purolator Air Filtration Products, Co.* (2000) 23 Cal.4th 163 [96 Cal.Rptr.2d 518, 999 P.2d 706] (*Cortez*). The trial court distinguished *Corbett v. Superior Court* (2002) 101 Cal.App.4th 649 [125 Cal.Rptr.2d 46] (*Corbett*) because the prospective class members in that case actually bought vehicles from the defendant, and were entitled to traditional restitution under the UCL. The court also ruled that plaintiffs had not shown the need for a class action to pursue only injunctive relief. As to Class B, the court found that common questions of law or fact did not predominate. Plaintiffs appealed.

## DISCUSSION

Plaintiffs argue that the trial court improperly relied on an incorrect legal theory regarding class certification of their UCL claim. They contend that the trial court misread *Cortez* and *Corbett* and based its ruling on the mistaken theory that the remedy of nonrestitutionary disgorgement of profits is never available in a UCL action, even when properly certified as a class action.

Plaintiffs also claim that the court failed to recognize that common issues of law and fact predominate in the public nuisance class.

We determine that the trial court used appropriate factual criteria and legal assumptions in ruling on the certification motion and affirm for the following reasons.

*Standard of Review and Class Action Requirements*

"The denial of certification to an entire class is an appealable order [citations], but in the absence of other error, a trial court ruling supported by substantial evidence generally will not be disturbed 'unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]' [citation]. Under this standard, an order based upon improper criteria or incorrect assumptions calls for reversal ' "even though there may be substantial evidence to support the court's order." ' [Citations.] Accordingly, we must examine the trial court's reasons for denying class certification. 'Any valid pertinent reason stated will be sufficient to uphold the order.' [Citation.]" (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436 [97 Cal.Rptr.2d 179, 2 P.3d 27].)

The necessary prerequisites for certification of a class are outlined in the Code of Civil Procedure, as explained by our Supreme Court. Class actions are authorized in California "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." (Code Civ. Proc., § 382.) "The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

■ Despite the Supreme Court's support of the procedural device of class actions, the court has remained mindful: "of the accompanying dangers of injustice [and] of the limited scope within which these suits serve beneficial purposes [and] has consistently admonished trial courts to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. [Citations.]" (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 459 [115 Cal.Rptr. 797, 525 P.2d 701] (*City of San Jose*).) The plaintiff bears the burden of demonstrating that substantial benefits will result from class certification. (*Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 913 [103 Cal.Rptr.2d 320, 15 P.3d 1071].)

*Plaintiffs' Failure to Show Substantial Benefit from Class Certification*

Plaintiffs claim that the trial court's denial of class certification of the UCL class was based on an incorrect legal theory regarding the available remedy. They rely primarily on *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116 [96 Cal.Rptr.2d 485, 999 P.2d 718] (*Kraus*) and *Corbett, supra,* 101 Cal.App.4th 649, to argue that nonrestitutionary disgorgement is available to plaintiffs in a UCL class action under the "necessary to prevent" prong of the UCL.[5] Plaintiffs contend that the trial court's reliance on *Cortez, supra,* 23 Cal.4th 163 betrays a misunderstanding of their claim because *Cortez* concerned restitution and plaintiffs do not seek restitution.[6] They argue that *Kraus*, rather than *Cortez* is the applicable case and that according to *Kraus*, nonrestitutionary disgorgement is available in a class action based on the UCL.

Plaintiffs' argument puts the cart before the proverbial steed. Before they may address the availability of a particular remedy, plaintiffs must establish that the purported class action is appropriate for certification. They failed to make that showing. We do not read the trial court's comments as necessarily denying the existence of the remedy of disgorgement in a properly certified class action, but as a determination that plaintiffs here failed to carry their burden of establishing the prerequisites for a certifiable class. (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1287 [119 Cal.Rptr.2d 190].) The court was saying that by itself, the desire to obtain nonrestitutionary disgorgement is not a sufficient showing that a class action is more beneficial than a representative action under the UCL, particularly when the proposed class members have no individual claims for restitution.

Contrary to plaintiffs' argument, the *Corbett* court did not hold that the mere desire to obtain disgorgement of profits supports class certification without an appropriate showing. The court in *Corbett* specified: "*Where a class has properly been certified,* a plaintiff in a UCL action may seek disgorgement of unlawful profits into a fluid recovery fund." (*Corbett, supra,* 101 Cal.App.4th at p. 655, italics added.) Even according to *Corbett,* a desire

---

[5] Section 17203 contains two categories of remedies, only one of which refers to monetary relief: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be *necessary to prevent* the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be *necessary to restore* to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

[6] The court in *Cortez* clarified the concept of restitution, stating that it was not limited to money taken from the plaintiff, but could also refer to unpaid wages owed to plaintiffs for work performed. (*Cortez, supra,* 23 Cal.4th at pp. 177–178.)

for a particular remedy is not itself a reason for certification. In addition, plaintiffs in *Corbett* had individual claims for restitution, as they had paid the allegedly illegal interest fees for cars purchased from defendant car dealer and financed by defendant bank. *(Id.* at pp. 656–657, 665 & fn. 6.) Their class action sought a fluid recovery for disgorgement of moneys that had a well-defined nexus to restitutionary damages, a factor not present in this case. They thus sought disgorgement of the illegally obtained funds into a fluid recovery fund as authorized by Code of Civil Procedure section 384.[7]

■ The fact that plaintiffs in a proposed class action have individual claims for return of funds that may be redressed in the class proceeding is a factor to consider in granting certification of the class. On the other hand, when the members of a proposed class have no individual monetary loss that may be redressed by disgorgement, that factor may weigh against class treatment. *(Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 386 [134 Cal.Rptr. 393, 556 P.2d 755] *(Blue Chip Stamps)* [unavailability of damages for class members is factor in considering group action].) The trial court's comment about *Corbett* merely recognized this distinction.

Disgorgement of profits sought by claimants with no ownership interest in the funds was considered for the first time in *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134 [131 Cal.Rptr.2d 29, 63 P.3d 937] *(Korea Supply)*, where the Supreme Court noted a distinction between two types of disgorgement. The court clarified its discussion in *Kraus,* stating that disgorgement is a broader remedy than restitution, but that disgorgement may have an element of restitution. Thus, disgorgement may refer to a surrender of all money obtained by a defendant, "even though not all is to be restored to the persons from whom it was obtained . . . ." But the term disgorgement " ' "has also been used to refer to surrender of all profits earned as a result of an unfair business practice *regardless of whether those profits represent money taken directly from persons who were victims of the unfair practice.'* ' " *(Korea Supply, supra,* at p. 1145.) The court in *Korea Supply* stated: "[W]e held in *Kraus* that while restitution was an available remedy under the UCL, disgorgement of money obtained through an unfair business practice is an available remedy in a representative action only to the extent that it constitutes restitution." *(Ibid.)*[8] The court distinguished its prior UCL cases that discussed the remedy of disgorgement as referring to "the restitutionary form

---

[7] Code of Civil Procedure section 384 provides in part: "(a) It is the intent of the Legislature in enacting this section to ensure that the unpaid residuals in class action litigation are distributed, to the extent possible, in a manner designed either to further the purposes of the underlying causes of action, or to promote justice for all Californians . . . ."

[8] The court in *Korea Supply* noted: "Our discussion in this case is limited to individual private actions brought under the UCL. In public actions, civil penalties may be collected from a defendant. (§ 17206.) Further, in *Kraus* we noted that the Legislature 'has authorized disgorgement into a fluid recovery fund in class actions.' *(Kraus, supra,* 23 Cal.4th at p. 137.)

of disgorgement, and not to the nonrestitutionary type sought here . . . ." (*Id.* at p. 1148.) The court confirmed: "This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL." (*Ibid.*)

The issue of the availability of nonrestitutionary disgorgement in a properly certified UCL class action was not resolved by any of the cited cases. The trial court's mention of *Cortez* and its distinguishing of *Corbett* merely noted the distinction between the two types of disgorgement and did not signal reliance on an incorrect legal theory.

■ Regardless of the correct resolution of the issue of remedy, we do not need to determine whether nonrestitutionary disgorgement such as is sought here, is ever available in a properly certified class action, because this case has not been shown to be a properly certifiable class action. Plaintiffs failed to show that substantial benefits would accrue to the litigants or the courts from class treatment.

At the hearing on the motion to certify the class in this case, counsel for one plaintiff candidly admitted that the only benefit of a class action over a representative UCL action was "the opportunity to obtain fluid fund recovery," based on *Kraus, supra,* 23 Cal.4th 116. Counsel admitted: "[d]isgorgement of profits is our only remedy other than injunctive relief." Plaintiffs made no showing of any other benefit from treating this action as a class action.

Plaintiffs argue that forcing the Quarry to turn over all profits made during the period that it was in violation of the various environmental and building regulations would be an effective way to prevent future violations under the "necessary to prevent" prong of the UCL. While that may be true, it is not dispositive. Our Supreme Court has stated that: "[w]hile termination of a defendant's alleged wrongdoing is a factor to be considered [citation] it does not warrant group action for damage when the members will not recover damage, and when a simpler remedy such as mandate is available." (*Blue Chip Stamps, supra,* 18 Cal.3d at p. 386.)

■ The " 'overarching legislative concern' " in establishing the UCL was to provide a streamlined procedure to prevent unfair competition. (*Korea Supply, supra,* 29 Cal.4th at p. 1150.) A plaintiff seeking the more burdensome route of class certification of the UCL claim must establish an advantage to proceeding as a class action. (*Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 775 [259 Cal.Rptr. 789].) The trial court must weigh the advantages of the cumbersome and potentially

These issues are not before us, and therefore we need not address them further." (*Korea Supply, supra,* at p. 1148, fn. 6.)

expensive class action mechanism against the streamlined procedure available in a representative suit under the UCL. (See, e.g., *Corbett, supra,* 101 Cal.App.4th at pp. 673, 682–684 (dis. opn. of Haerle, J.) [enumerating 10 specific differences between class actions and representative UCL actions]; see also Cohelan on California Class Actions (2002–2003) § 1.04, p. 7 [class actions are procedurally complex, can be expensive, may proceed slowly, be more time consuming, and must be resolved in manner that "precludes attention to the idiosyncratic nature of individual claims"].)

Here, plaintiffs can use the streamlined provisions of the UCL to obtain an injunction against the Quarry's illegal acts. That streamlined procedure, tailored to allow an expeditious remedy for terminating unfair competition, is the purpose of the UCL. Plaintiffs made no showing of substantial benefit to the proposed class, aside from their hope of obtaining a remedy that the UCL does not provide in a representative action. "Class actions are provided only as a means to enforce substantive law. Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." (*City of San Jose, supra,* 12 Cal.3d at p. 462; see also *Mirkin v. Wasserman* (1993) 5 Cal.4th 1082, 1103 [23 Cal.Rptr.2d 101, 858 P.2d 568].) The substantive law does not allow nonrestitutionary disgorgement in a representative UCL action. The possibility that it may be available in a class action is not a sufficient reason to upset the trial court's careful determination regarding the class certification issue.

We decline to interfere with the trial court's decision by ordering certification of a class for the sole reason that the proposed class members desire a remedy that they would not be entitled to as individuals. Plaintiffs failed to show a substantial benefit would result from class certification. The trial court here used the correct legal standard, and substantial evidence supports its order. For these reasons and based upon our independent review of the record, we will not disturb the decision.

*Denial of Class Certification for Nuisance Cause of Action*

In their motion for class certification, plaintiffs described Class B as: "all persons who are or have been legal residents for at least 30 days' duration within Marin County, California, and reside (or did reside) in an area within five square miles of the [Quarry] and Point San Pedro Road since September 25, 1998. This class seeks non-economic and economic damages based upon allegations of public nuisance for annoyance, inconvenience, and discomfort." In denying certification as to that proposed class, the trial court stated:

"common questions of law or fact do not predominate . . . . 'Special injury' is another element where proof would vary significantly between the estimated 11,075 class members. (See Civ. Code, § 3493.)"[9]

The trial court's ruling was supported by two reports submitted by the Quarry in opposition to the motion for certification. The first report, prepared by Charles M. Salter Associates Inc. (Salter report), concerned noise in the area surrounding the Quarry and the varying impacts on individual residents. The Salter report investigators measured the Quarry-related noise at 16 representative locations within five miles of the Quarry. The report noted multiple factors that would affect how each location would receive noise, including the presence of acoustically absorptive landscaping, type of nearby ground, location of ridgelines, man-made obstacles, atmospheric conditions, construction design and other factors.

In summary, the Salter report found that "[t]he variation in noise is due to the wide range of distances between the noise sources and homes and shielding of the noise provided by natural terrain, intervening homes and vegetation. Because of these factors, in many locations, neighbors within a few hundred feet of each other have dramatically different exposure." The report notes that noise exposure also varies inside of individual homes due to the orientation of rooms, nature of furnishings, size and construction of windows and whether windows are open or closed.

The second report, prepared by Blast Dynamics, Inc., analyzed how blasting at the Quarry affected neighboring residents. This report identified a number of variables in the way that different residents would experience vibration from blasting. These variables include the presence of rock or soil formations that alter the frequency of blast waves, the natural or "resonant" frequencies in each structure that change the response to vibration, distance from the blast site and differences in the duration of the blasts. The report included a geologic map of the area showing a combination of soil, rock, sandstone, artificial fill, bay mud and marshland under the relevant area. The report noted that soil typically filters out high frequency energy, while rock transmits it. Test blasts were detonated at the Quarry and instruments were placed at various locations to evaluate the differing effects. The results of the velocity measurements showed a decrease in impact with distance from the blast site, but the frequency measurements showed no consistent pattern. The

---

[9] "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal." (Civ. Code, § 3480.)

"A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise." (Civ. Code, § 3493.) We do not discuss the special injury requirement in light of our resolution of the common questions issue.

report concluded that: " [t]he test data shows that it is unreasonable to expect that any two sites will experience the same blast related vibration . . . ."

Despite the evidentiary showing in the two submitted reports, plaintiffs contend that common issues predominate in their proposed public nuisance class. They claim that it is error to deny class action status because each member of the class may have to make an individual showing of damages. They rely on *Employment Development Dept. v. Superior Court* (1981) 30 Cal.3d 256, 266 [178 Cal.Rptr. 612], a case where a large number of applicants were denied unemployment benefits based on an unconstitutional statute. In that case, liability could be established by resolution of the common issue of the validity of the statute. This commonality allowed class action treatment despite the subsequent need for individualized proof of entitlement or damages.

Plaintiffs also cite *Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 916 [107 Cal.Rptr.2d 761], an action against a developer for building foundations with a defective material. Common questions of liability in that case turned on the nature of the product used and not the particular condition of each foundation. The fact that actual repair costs may vary could be dealt with by use of a formula and did not preclude class treatment.

Neither of those cases involved facts similar to the case against the Quarry. Each case involved a common issue of liability and each class member's entitlement to damages depended on that issue. "[W]here, after the common questions have been determined, each class claimant would still have to litigate a number of substantial questions peculiar to himself in order to recover, there does not exist a necessary community of interest and there is no assurance the class representative would indeed be representative. A class action is therefore improper." (*Reyes v. Board of Supervisors* (1987) 196 Cal.App.3d 1263, 1281 [242 Cal.Rptr. 339].) "[A] class action cannot be maintained where each member's right to recover depends on facts peculiar to his case . . . .. The rule exists because the community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining his individual right to recover following the 'class judgment' determining issues common to the purported class. [Citation.]" (*City of San Jose, supra,* 12 Cal.3d at p. 459.) "Only in an extraordinary situation would a class action be justified where, subsequent to the class judgment, the members would be required to individually prove not only damages but also liability." (12 Cal.3d at p. 463.)

In *City of San Jose, supra,* 12 Cal.3d 447, the court vacated a trial court's order certifying a class action complaint against a municipal airport for noise, vapor, dust and vibration. In evaluating the suitability of the action for class

treatment, the court stated: "each member must not be required to individually litigate numerous and substantial questions to determine his right to recover following the class judgment; and the issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants." (*Id.* at p. 460.)

The *City of San Jose* court noted that in other cases: "Liability to the class could be established by evidence defendant engaged in an illegal scheme to cheat or overcharge patrons, coupled with a showing from defendant's own books that defendant was successful in his scheme." (*City of San Jose, supra,* 12 Cal.3d at p. 460.) Contrasting those cases to the nuisance case before it, the court observed: "An approaching or departing aircraft may or may not give rise to actionable nuisance or inverse condemnation depending on a myriad of individualized evidentiary factors. While landing or departure may be a fact common to all, liability can be established only after extensive examination of the circumstances surrounding each party. Development, use, topography, zoning, physical condition, and relative location are among the many important criteria to be considered. No one factor, not even noise level, will be determinative as to all parcels." (*Id.* at p. 461.)

The *City of San Jose* court observed: "Then, because liability is here predicated on variables like the degree of noise, vapor, and vibration, the problem is compounded by the factors of distance and direction affecting these variables. The result becomes a statistical permutation, and the requisite number of subclassifications quickly approaches the total number of parcels in the class. Under such circumstances, there is little or no benefit in maintaining the action as a class." (*City of San Jose, supra,* 12 Cal.3d at p. 462.)

Plaintiffs argue that the issue of impact is an objective standard, capable of common proof, citing *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938 [55 Cal.Rptr.2d 724, 920 P.2d 669]. But that case only stated that the degree of harm caused by a private nuisance is judged by the reasonable person standard and not by a particular plaintiff's own sensibilities. It does not solve the problem of variations in proof of whether any harm occurred. In this case, the multiple variations in potential impact (or complete lack of impact) of Quarry's operations discussed in the Salter and Blast Dynamics reports involve differences in establishing Quarry's liability to the proposed class members as well as in the nature of the damages suffered. For example, the residents of a house built on soil, behind a hill or on the waterfront may be completely unaware of the Quarry's activities and suffer no discomfort or annoyance. Neighboring residents in homes built on rock without barriers might suffer varying degrees of annoyance from

vibration, noise, dust or other by-products of the Quarry's business. The former residents cannot establish liability for maintaining a public nuisance. The latter have infinite variations in degree of impact.[10]

■ The *City of San Jose* case is similar to this case, and its rationale supports the trial court's decision. The variables that prevented class treatment in *City of San Jose* are analogous to the variables present in this case. Rather than mere variations in the measure of damages, these factors are the keys to defendant Quarry's liability. Whether each resident even heard or felt the impact of Quarry's operations is subject to separate and differing matters of proof. Each resident would have to prove interference with the comfortable enjoyment of life or property and that the interference was "*substantial* and *unreasonable*." (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1104–1105 [60 Cal.Rptr.2d 277, 929 P.2d 596].) Plaintiffs produced no evidence that these issues do not vary significantly as to each individual in the defined area.

The trial court relied upon correct legal theories and its conclusions are supported by substantial evidence. We affirm.

## CONCLUSION

The order denying class certification is affirmed.

Swager, J., and Margulies, J., concurred.

---

[10] Plaintiffs also argue that since they do not seek recovery for diminution in property value, but only for annoyance and inconvenience, the nuisance impact is capable of common proof. But the evidence submitted by the Quarry disputed the usefulness of subclasses based on distance from the Quarry because of the lack of any pattern of impact.