Filed 8/21/14  Coalition etc. Del Mar Beach Club v. Del Mar Beach Club Owners Assn. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| COALITION OF CONCERNED OWNERS AT DEL MAR BEACH CLUB, et al., | D064506 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00058052-CU-MC-NC) |
| DEL MAR BEACH CLUB OWNERS ASSOCIATION, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

Shewry & Van Dyke and Steven M. Shewry for Plaintiffs and Appellants.

Bremer, Whyte, Brown & O'Meara, Kere K. Tickner, Brian W. Skalsky; Epsten Grinnell & Howell, Rian W. Jones; and Everett L. Skillman for Defendants and Respondents.

Plaintiffs and appellants, four homeowners and their interest group, the Coalition of Concerned Owners at Del Mar Beach Club (the Coalition), brought this action for

declaratory and injunctive relief against the homeowners' association for the common interest development where their units are located, defendant and respondent Del Mar Beach Club Owners Association, Inc. (the Association). Their current pleading, the second amended complaint (SAC), also seeks damages for misrepresentation on behalf of those four individual homeowners, Ken Bien, Miguel Elias, Don Adams and Mark Dye (together the individual plaintiffs), who own a total of six beachfront units (on the Pacific Ocean) at the multi-building development. The dispute arises out of the Association's decision to terminate natural gas utility service to two of the buildings at the development.

This appeal challenges the trial court's ruling denying a class certification motion brought by both the Coalition and the individual plaintiffs (sometimes together Appellants), who claimed that in a representative capacity, they were entitled to injunctive and declaratory relief against unfair and illegal conduct. (Bus. & Prof. Code, § 17200 et seq., the Unfair Competition Law or UCL; Code Civ. Proc., § 382.) The trial court denied Appellants' concurrent motion for leave to file a third amended complaint (TAC), based on similar theories that the Association had wrongfully failed and refused "to restore natural gas service to Buildings 700 and 800." Appellants allege that the Association's decision to shut off those gas lines was contrary to the duties it owed to them by statute and violated the fiduciary duties imposed by its governing documents.[1]

---

1    Former Civil Code section 1364, now Civil Code section 4775, is a provision in the Davis-Stirling Common Interest Development Act (the Act), which was repealed, reenacted and renumbered. (Stats. 2012, ch. 180, § 2, p. 2845, operative Jan. 1, 2014;

2

Appellants now contend the trial court erred as a matter of law when it evaluated the record for (1) the required community of interest among class members and (2) superiority of class treatment, and determined Appellants had not met their burden of showing class certification was appropriate. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) Our analysis of the operative pleading, the SAC, as well as the proposed TAC, together with the admissible portions of the supporting and opposing declarations, persuades us that the trial court appropriately denied the motion. There will be significant variations in the proof of harm, if any, to any individual homeowner that is attributable to the Association's decision to cease providing natural gas service to the two beachfront buildings at the development. (See *Frieman v. San Rafael Rock Quarry, Inc.* (2004) 116 Cal.App.4th 29, 40 (*Frieman*).)

Moreover, the trial court did not erroneously rely on improper criteria or incorrect assumptions to reach its conclusions. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436; *Brinker, supra*, 53 Cal.4th 1004, 1050.) Appellants argue the court must have erroneously relied on evidence presented in opposition by the Association (i.e., letters from other homeowners), even though the court simultaneously sustained Appellants' objections to it. The showing made by Appellants in support of their motion consisted of their proposed TAC and their attorney's declarations, which stated that the Association had undertaken discovery that was "focused in large part on [the Coalition's] authority to represent the owners," and thus he filed the motion for class certification to clarify the

now see Civil Code, § 4000 et seq. on residential properties.) All further statutory references are to the Civil Code unless otherwise noted.

3

issue.  Appellants presented essentially no supporting evidence about any factors favoring class certification.  The pleadings outlined the legal issues presented, which the court adequately addressed, and the references in the ruling to the excluded opposition evidence did not undermine the court's otherwise well-supported analysis.  (*Brinker*, *supra*, 53 Cal.4th at pp. 1021-1022; *Ramirez v. Balboa Thrift & Loan* (2013) 215 Cal.App.4th 765, 776-777 (*Ramirez*) [any valid pertinent reason in the ruling is sufficient to uphold such an order].)  We affirm.

I

*BACKGROUND*

The SAC describes this development as consisting of 192 total units.  The 63 beachfront units are located in two of the buildings (Buildings 700 and 800).  The remaining 129 units are located east of the beachfront buildings.  For about 40 years, the natural gas lines which served the beachfront units were on one meter and ran along the common area outside of Buildings 700 and 800, and provided fuel for barbecues on those exterior patios and balconies.  The SAC represents that the Association allowed some owners of beachfront units, including these individual plaintiffs, to extend the exterior natural gas lines into their residences to power their interior natural gas fueled appliances.  Those owners purchased separate gas meters from the Association for their units and were billed for their natural gas usage.

Although the 129 nonbeachfront units at the development have continuously been provided with both natural gas and electric utility service, the gas service for the 63 beachfront units was disrupted by leaks starting in July 2010.  After investigation, the

4

Association had the gas line to Building 700 shut off, and determined the cost of replacement was approximately $20,000. It planned to shut down both gas lines.

After a predecessor to this action was filed, Appellants obtained a temporary restraining order to prevent shutoff of the other gas line. However, when a leak was detected in the remaining gas line, the utility (San Diego Gas & Electric) shut it down in late 2010.

In the SAC, Appellants cite to language in the development's declaration of restrictions (the Declaration), stating that the Association was created to acquire, hold title to, and manage the common areas. (Art. VI, § 6.1 of the Declaration.) Also, under its article VI, section 6.2.6, the "Association has and shall have the following rights and duties, . . . [t]o contract, provide and pay for (i) maintenance, utility, gardening and other services benefitting the Common Areas." They allege that by statute, such an association "is responsible for repairing, replacing, or maintaining the common area, other than exclusive use common area . . . ," unless otherwise provided in the governing documents. (Former § 1364, subd. (a) [now § 4775, subd. (a)].)

The SAC defines the potential class and the Coalition as "all owners and residents of Buildings 700 and 800 of the [development] who own or reside in units that previously were serviced by natural gas lines and, therefore, are real parties in interest . . . ."[2] The

_____

2   In the respondent's brief, the Association claims none of the four individual plaintiffs is alleged to be suing in a representative capacity. However, both the SAC and the TAC cite to Business and Professions Code section 17200, et seq., as well as Code of Civil Procedure section 382, and they evidently attempt to plead a representative-type UCL action.

5

SAC seeks declaratory relief and an injunction to prevent further alleged breaches of the Association's statutory and fiduciary duties pursuant to the Declaration. The SAC pleads that the Association is obligated to "pay for and implement the repairs and improvements necessary to restore natural gas service to Buildings 700 and 800." An injunction is requested to require the Association to take such action. Appellants claim entitlement to an award of fees and costs under the terms of the Declaration and former section 1354 (now § 5975).[3]

The proposed TAC seeks the same basic relief, except the proposed class definition appears to be expanded to include beachfront owners who purchased natural gas meters or extended gas lines into their units for use with their appliances.[4]

### B. Motion and Opposition; Ruling

Along with their motion for class certification, Appellants filed their motion to allow filing of the TAC, which they said would be withdrawn if class certification were denied. Neither the SAC or the TAC is verified by representatives of Appellants. (Code Civ. Proc., § 446.)

---

[3] Former section 1354, subdivision (a) (reenacted without change as § 5975, subd. (a)), provides in pertinent part: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, *unless unreasonable*, and shall inure to the benefit of and bind all owners of separate interests in the development. Unless the declaration states otherwise, these servitudes may be enforced by any owner of a separate interest or by the association, or by both." (Italics added.)

[4] In the SAC, the individual plaintiffs also sought damages for the Association's alleged misrepresentations and promises without intent to perform. Had the TAC been approved, it would have dropped the Coalition as a plaintiff and omitted any damages claims by the individual plaintiffs.

In support of the class certification motion, Appellants' points and authorities argued that the individual plaintiffs will be adequate class representatives, and since the case deals with the legality of standardized documents, it is generally appropriate for resolution on a class basis. As factual support, Appellants mainly relied on their attorney's declaration, which explained that the motion was made in response to the Association's discovery requests about the existence of Appellants' authority to represent all the putative class members.

In opposition, the Association argued no community of interest was shown to exist, because some of the proposed class members had not sustained the alleged damage. The opposition papers included an attorney declaration attaching seven letters from the owners of units in Buildings 700 and 800 stating they approved of the way the Association handled the gas line issue.[5]

Appellants objected to the letters and any discussion of them as inadmissible hearsay.

After hearing argument and taking the matter under submission, the trial court sustained Appellants' objections to the Association's homeowner letters. The motion for class certification was denied, as was the motion to amend. The court concluded Appellants had not shown a community of interest as alleged, because the conditions at the individual beachfront units presented individualized questions about any entitlement

---

[5]    The Association complains that the moving papers were not served in a timely fashion. However, the trial court received opposition and reached the merits of the issues presented, and we do likewise.

7

to the requested relief, based on variations in proof of harm.  (*Frieman, supra*, 116 Cal.App.4th 29, 40.)  Further, there was no adequate showing that a class action method would be superior to litigation of individual lawsuits, based on the lack of a community of interest and remaining questions about proper identification of class members.

Appellants appealed, designating the clerk's transcript as the record on appeal.  In their briefs on appeal, they represent that at the time of the trial court hearing, their attorney had letters from several other beachfront owners who agreed with the goal of the action, but he decided not to submit them after his objections to the Association's similar letters were sustained.[6]

II

*CLASS CERTIFICATION REQUESTS*

The denial of certification is an appealable order, effectively dismissing the proposed class action.  (*Daar v. Yellow Cab, Inc.* (1967) 67 Cal.2d 695, 699.)  " 'Section 382 of the Code of Civil Procedure authorizes class suits in California when "the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court."  The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members.' "  (*Lockheed Martin v.*

---

[6]     California Rules of Court, rule 8.120(b) requires a record of the superior court oral proceedings if the appellant raises an issue that requires consideration of them.  However, this case presents primarily questions of law on a given set of facts, and our review may be conducted without any need of a reporter's transcript.

*Superior Court* (2003) 29 Cal.4th 1096, 1103-1104 (*Lockheed Martin*).) " 'Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this [community of interest] question.' " (*Sav-on Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 (*Sav-on Drug Stores*).) Each theory asserted by the class must be analytically suitable for class treatment. (*Ibid.*) "Individual issues do not render class certification inappropriate so long as such issues may effectively be managed." (*Id.* at p. 334.)

In *Brinker*, *supra*, 53 Cal.4th at page 1022, the court summarized the rules for appellate review of a class certification order. " 'The decision to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Ibid.*) Predominance is a factual question, and a trial court finding that common issues predominate generally is reviewed for substantial evidence. (*Ibid.*) "We must " '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record. . . .' " (*Ibid.*)

As explained in *Ramirez*, *supra*, 215 Cal.App.4th 765, an appellate court considering a trial court order denying class certification will evaluate only the reasons

9

given in the ruling. " 'Appeal of an order denying class certification "presents an exception to the general rule on review that we look only to the trial court's result, not its rationale." [Citation.] Erroneous legal assumptions or improper criteria may require reversal "even though there may be substantial evidence to support the court's order." [Citation.]' . . . However, ' "[a]ny valid pertinent reason stated will be sufficient to uphold the order.' " (*Id*. at pp. 776-777.)

III

*SHOWING ON SUITABILITY OF CLASS TREATMENT*

A. Legal Context of Theories in SAC and TAC

Class actions are a procedural device intended to enforce substantive law. (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 462.) In ruling on a certification request, the court does not ask whether an action is legally or factually meritorious. (*Lockheed Martin, supra,* 29 Cal.4th at p. 1104.)

Since no leave to amend was granted to file the TAC, we are required to treat the operative pleading as the SAC. In either case, we focus primarily on the class theories in support of declaratory and injunctive relief. Appellants seek to enforce language in the governing documents and in former section 1364, subdivision (a) (now § 4775, subd. (a)), to the effect that the Association is responsible for repairing, replacing, or maintaining the common areas, such as where the gas lines run, and it has breached its fiduciary duties by failing to do so.

Where, as here, an aggrieved party seeks a mandatory injunction to remedy an alleged violation of the restrictions in such a declaration of restrictions, "the court will

10

balance the equities, weighing the relative hardship on the defendant against the benefits to the plaintiff if such an order is granted."  (8 Miller & Starr, Cal. Real Estate (3d ed. 2011) § 24:26, p. 24-98; fn. omitted.)

"The duties and powers of a homeowners association are controlled both by statute and by the association's governing documents."  (*Ostayan v. Nordhoff Townhomes Homeowners Association, Inc.* (2003) 110 Cal.App.4th 120, 127.)  In view of the type of relief requested by the SAC, Appellants' theories about the duties and obligations of the Association will be measured by provisions of the Act and the Declaration.  The parties do not go into detail about the substantive law that governs common interest developments, except for citing to portions of the Act (e.g., former § 1351 et seq. [current § 4775].

In considering the appropriateness of class treatment for such requested remedies, *Nahrstedt v. Lakeside Village Condominium Assn*. (1994) 8 Cal.4th 361, provides guidance for evaluating issues arising under the Act.  Under former section 1354 (now § 5975), the reasonableness of recorded common interest development restrictions, such as these, "is to be determined not by reference to facts that are specific to the objecting homeowner, but by reference to the common interest development as a whole. . . .  [T]he restriction is presumed to be reasonable and will be enforced uniformly against all residents of the common interest development unless the restriction is arbitrary, imposes burdens on the use of lands it affects that substantially outweigh the restriction's benefits to the development's residents, or violates a fundamental public policy."  (*Nahrstedt, supra,* at p. 386.)

11

Under this interpretive approach, an association's duty to enforce a provision in a restrictive declaration cannot be decided in the abstract, but requires a factual showing about the overall effects of the provision upon the development as a whole. Likewise, class certification requests require factual and legal support to enable the trial court to exercise its discretion appropriately in ruling upon them. (See *Brinker*, *supra*, 53 Cal.4th at p. 1022.)

## B. Community of Interest

As outlined in *Lockheed Martin, supra,* 29 Cal.4th at page 1104: " 'The community of interest requirement [for class certification] embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class.' " Predominance of common questions is a factual question, and the trial court's findings on whether common issues predominate in a given case will be reviewed for substantial evidence. (*Sav-On Drug Stores, supra,* 34 Cal.4th at pp. 328-329; *Brinker, supra*, 53 Cal.4th at p. 1021.)

In *Frieman*, *supra*, 116 Cal.App.4th 29, the court analyzed whether class treatment was proper for an action by neighboring property owners who sought nuisance damages from noise generated by the defendant's quarry operations. There was evidence from expert witnesses establishing that there were many differences among potential class members on the issues of liability for nuisance, "as well as in the nature of the damages suffered." (*Id*. at p. 41.) The request for class certification was denied, for lack of uniformity in the type and degree of impact that was likely among the neighboring class

12

members.  (*Id.* at pp. 41-42.)  On appeal, no abuse of discretion was found in the denial of certification, since individualized issues almost certainly predominated over any common issues, and there was a potentially wide disparity in the amount of damages provable by each class member.  (*Ibid.*)

Appellants mainly argue this ruling was improperly based upon excluded evidence from letters submitted by the Association (to the effect that some beachfront owners in the Association were opposed to this lawsuit).  Appellants fail to recognize that, as the proponents of class certification, they had the obligation to supply substantial evidence of a common, systematic Association policy on providing utilities, and to show that a common method of proof about its effects would be available to establish the Association's liability.  (See *Brinker, supra*, 53 Cal.4th 1004, 1051.)

Appellants further claim it is unfair and unlawful that natural gas service continues to be available to the owners of the 129 nonbeachfront units, while the Association has treated the beachfront owners differently in that regard.  From the pleadings and motion papers, it can readily be recognized that determining whether the Association failed to act "reasonably" in making its decisions will require fact-intensive, individualized inquiries regarding the effects of the restrictions and obligations in the Declaration upon different areas of the development, in terms of the feasibility of the gas line repair and replacement project.  (§ 5975, subd. (a) ["The covenants and restrictions in the declaration shall be enforceable equitable servitudes, *unless unreasonable . . . .*"].)  In this factual and legal context, the trial court had the discretion to decide that resolving this type of dispute on a classwide basis would be unduly difficult.  The obligations that were imposed on the

13

Association (whether "by virtue of its fiduciary duties, Civil Code section 1364, the Declaration, and the Public Utilities Code") cannot readily be interpreted or enforced on a generic basis.

We acknowledge that the trial court's ruling inexplicably makes a reference to the opposing attorney's declaration, even though Appellants' objections to its attachments and content were sustained. However, the court's substantive ruling that the evidence failed to show a true community of interest is otherwise supported by the record. Essentially, this denial order found that no sufficient evidence had been produced to support Appellants' position about the existence of predominant common issues of fact and law. The court applied the correct legal principle in ruling on the motion, that a class action is not feasible where obvious variations in proof will require individualized evidence about the claimed harm and liability outlined in the pleadings. (*Frieman, supra*, 116 Cal.App.4th 29, 40.) Thus, the court based its denial of class certification on at least one legally valid, supported ground, and its ruling was not erroneous or an abuse of discretion. (*Ramirez, supra*, 215 Cal.App.4th 765, 776-777, relying on *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311.)

Moreover, Appellants are not really in a position to complain about any erroneous factual references to opposing evidence in the ruling, because it was their burden to establish a community of interest, but they did not do so. " '[T]he proponent of certification must show, inter alia, that questions of law or fact common to the class predominate over the questions affecting the individual members.' " (*Lockheed Martin, supra*, 29 Cal.4th at p. 1104.) Appellants supplied only attorney declarations that were

14

deficient in any factual showing about common facts and law.  No substantial evidence supported their requested predominance finding.  (*Brinker, supra*, 53 Cal.4th 1004, 1021-1022.)

### C.  Superiority of Class Treatment

A class action must be the "superior" means of resolving the litigation, for both the parties and the court.  (*Newell v. State Farm Gen. Ins. Co.* (2004) 118 Cal.App.4th 1094, 1101.)  Group action has the potential to create injustice, and therefore trial courts are required to " ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' "  (*Ibid*.)

The burden is on the party seeking certification to establish the existence of an ascertainable class, as well as a community of interest.  (*Lockheed Martin, supra,* 29 Cal.4th 1096, 1103-1104.)  A properly identified class must be "ascertainable," meaning that the class must comprise a "group that was [actually] harmed by the defendant[s]."  (See *Akkerman v. Mecta Corp., Inc.* (2007) 152 Cal.App.4th 1094, 1100.)

Again we note that under section 5975, subdivision (a) (formerly § 1354, subd. (a)), the covenants and restrictions in the Declaration "inure to the benefit of and bind all the owners of separate interests," and the Association must enforce them, "*unless unreasonable.*"  (*Ibid*.; italics added.)  The record supports an inference that the interests of some of the beachfront unit owners may well have been harmed, as alleged, by the Association's discontinuation of natural gas service to the two buildings.  Based on the SAC's pleading of the projected expenses for restoring the common area natural gas lines,

15

not only the interests of these beachfront property owners are affected, but also, the individualized interests of the owners of the 129 other properties in this common interest development. Determining the enforceability of the Declaration's provisions about maintenance of utilities and common areas in this context will require not only legal analysis but also fact-intensive showings about the physical and regulatory conditions at various units.

In determining whether injunctive or declaratory relief is proper, the court must balance the equities, including the relative hardships or benefits for not only Appellants and the Association, but also other stakeholders. (See 8 Miller & Starr, *supra*, § 24:26, p. 24-98.) We cannot conclude that the trial court abused its discretion in concluding that the resolution of these complicated issues, as presented, would not be feasible in a class setting. Even though interpretation of the Declaration in light of statutory provisions will be required, the availability of the requested relief does not depend only upon facts common to all members of the proposed class. (*Brinker, supra*, 53 Cal.4th 1004, 1021-1022.)

In conclusion, Appellants did not demonstrate to the trial court that a class action was the fairest and most efficient way to decide the claims of all 63 beachfront owners. (Code Civ. Proc., § 382.) We affirm the order, and in this procedural context, express no opinion on the merits of the substantive issues.

DISPOSITION

The order is affirmed.  Costs are awarded to Respondent Association.


HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


McINTYRE, J.


17