Filed 10/10/14  Brunoehler v. Amstem Corp. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DWIGHT BRUNOEHLER, | B252545 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC461996) |
| v. | |
| AMSTEM CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Barbara A. Meiers, Judge.  Reversed and remanded.

Law Offices of Lisa L. Maki, Lisa L. Maki, Allison M. Schulman, Jill McDonell for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

_____

Plaintiff and appellant Dwight Brunoehler appeals from the default judgment ordering his former employer, defendant and respondent Amstem Corporation, to pay $537,657.49 in salary, expense account, and health premium benefits owed, prejudgment interest, and costs, but denying Brunoehler's request for an award of attorney fees, and dismissing all Doe defendants from the action. Brunoehler asserts he is entitled to attorney fees, and that defendants Dr. Han Hoon and Histostem Corporation Limited should not have been dismissed from the action with prejudice.

We reverse the judgment as to the denial of attorney fees, to which Brunoehler is entitled under Labor Code 218.5,[1] as we discuss below. The court failed to dispose of the claims as to named defendants Hoon and Histostem, stating in the judgment only that "all Doe defendants are ordered dismissed."[2] Accordingly, we remand for the court to award reasonable attorney fees under section 218.5, and to rule with respect to the claims against Hoon and Histostem.

## PROCEDURAL HISTORY

### *Complaint*

On May 20, 2011, Brunoehler filed a complaint against Amstem, Histostem, and Hoon, for damages for fraudulent inducement, negligent misrepresentation, breach of

---

[1] All further statutory references are to the Labor Code, unless otherwise specified.

[2] Although the tentative ruling states that "[N]o cause of action has been established as to any other defendant and the case as to all other defendants will be dismissed with prejudice[,]" the court's judgment of September 18, 2013, does not mention other defendants and does not incorporate the tentative ruling by reference.

2

written contract, failure to pay wages due, waiting time penalties (§§ 201-203), wrongful termination in violation of public policy, and defamation.[3]

Relevant here, the complaint alleged that on September 1, 2010, Brunoehler entered into an employment contract with Amstem. He agreed to serve as President of Amstem in exchange for a base salary of $250,000 for the first year of employment, $275,000 in salary for each subsequent year of employment, healthcare benefits, reimbursement of expenses, and stock options. The contract provided that Brunoehler could be terminated for cause at any time with written notice. In the event that Brunoehler willingly failed or refused to carry out reasonable and lawful instructions of the Board of Directors relating to his duties, or breached any material provision of Section 13 or 14 of the employment contract, he was entitled to 30 days to cure the failure or breach. Termination could occur immediately upon written notice from Amstem if Brunoehler was convicted of or pleaded guilty or no contest to any felony. The contract also provided that "[i]n connection with any litigation arising out of the transaction or the relationship of the parties evidenced by this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees . . . ."

Brunoehler was responsible for seeking additional financing opportunities for Amstem, among other duties, and promptly brought in $1 million in bridge financing. At the time the employment contract was made, Amstem represented to Brunoehler that it merged with Histostem in early 2010, and that as a result, Amstem acquired 90 percent ownership of Histostem and Histostem acquired 60 percent ownership of Amstem.[4] Soon after Brunoehler was hired he learned that Histostem, which was Amstem's one major asset, was unable or unwilling to complete its financial reports for the third quarter of 2010. Although Brunoehler was assured that Histostem's financials would soon be

---

[3] On October 3, 2011, Brunoehler filed a Notice of Errata regarding a missing exhibit, and attaching the employment contract.

[4] Hoon was the founder and CEO of Histostem and the Chairman of the Board of Directors of Amstem.

completed, they were not. As a result, Amstem was unable to complete both its third and fourth quarter financial reports and its required Security and Exchange Commission filings. All financing efforts ceased, and Amstem was delisted from trading on the Over-The-Counter stock exchange.

With the support of the Board of Directors, Brunoehler hired a Los Angeles consulting firm to investigate and rectify the problem. The investigation revealed that Amstem did not have an ownership interest in Histostem, and that the documentation purporting to demonstrate the 90 percent ownership was defective and fraudulent. Brunoehler notified Histostem that the ownership issue must be remedied immediately.

With the aid of counsel and the consulting firm, Brunoehler drafted a settlement agreement, dated November 11, 2010, relinquishing Amstem's claims of ownership in Histostem in exchange for a $3.1 million convertible note, all of Histostem's patents, and rights to a skin cream line in North America, South America, and Europe. The payment stream under the convertible note was intended to serve as Histostem's repayment of the bridge financing Brunoehler arranged. Histostem defaulted on the note after making a single payment of $50,000.

Amstem ceased compensating Brunoehler in any manner as of November 1, 2010, despite the Board of Director's assurances that he would be paid. On April 26, 2011, Brunoehler received written notice of his termination "for cause," effective immediately. Brunoehler alleged this was in violation of the employment contract, which required Amstem to provide 30 days notice and the opportunity to cure. He believed that his termination was in retaliation for exposing the ownership issues with Histostem.

The complaint alleged that Brunoehler was entitled to compensatory damages, including lost wages, earnings, benefits, expenses, stock options, warrants, and all other sums of money, together with interest according to proof, estimated to exceed $500,000; damages for breach of written contract in an amount according to proof, but in no event less than $151,000, special damages according to proof, a money judgment for mental pain, anguish, and emotional distress according to proof; liquidated damages pursuant to section 1194.2; waiting time penalties; prejudgment interest on the foregoing pursuant to

4

section 218.6; punitive damages; costs of suit and attorney fees, including attorney fees pursuant to contract, statute, including section 1194, and/or any other basis; for postjudgment interest; and any other relief deemed appropriate.

None of the defendants answered the complaint.

*Request for Entry of Default and First Request for Default Judgment*

Brunoehler filed a request for entry of default against Amstem on August 4, 2011, and against Histostem and Hoon on March 7, 2012. The defaults were entered. Brunoehler filed a request for default judgment against all defendants on May 29, 2012, along with the supporting declarations of Brunoehler and counsel Lisa Maki which detailed the calculation of costs, attorney fees, and prejudgment interest.

The trial court denied the request for default judgment and ordered Brunoehler to file points and authorities addressing its minute order on May 1, 2013, citing problems with jurisdiction, venue, and service, in addition to lack of factual and legal support for the specific claims, and lack of a special specific statement of damages. Brunoehler complied, stating that further proofs would be submitted in a subsequent request for default judgment.

*Second Request for Default Judgment*

Brunoehler filed a second request for default judgment against all defendants and Statement of Points and Authorities on August 6, 2013, along with an Evidence Package containing the following:

1) Amstem's Corporate Form 8-K, dated September 7, 2010, filed with the Securities and Exchange Commission;

2) Termination letter dated April 26, 2011, from Amstem to Brunoehler;

3) Letter dated November 9, 2010, to Amstem from Litke Properties, Inc.

4) Retainer Agreement dated October 21, 2010, between Amstem and TroyGould PC;

5) Securities and Exchange Commission Search and Filing Detail for Amstem, dated April 29, 2011;

6) Declaration of Diligence for service on Amstem, filed April 16, 2011;

7) Pages from the Histostem website

8) Employment Agreement dated September 21, 2010, between Brunoehler and Amstem;

9) Statement of Damages to Amstem, with Proof of Service, dated September 24, 2012;

10) Statement of Damages to Amstem, with Proof of Service, dated May 15, 2013;

11) Damages Spreadsheet;

12) Billing records for the Law Offices of Lisa Maki;

13) Costs records for the Law Offices of Lisa Maki.

Pertinent here, the Statement of Points and Authorities requested attorney fees under section 218.5.

The court entered a default judgment as to Amstem, requiring it to pay $537,657.49 in damages, based on salary, expense account, and health premium benefits owed; prejudgment interest; and costs, but denied Brunoehler's request for an award of attorney fees. It dismissed all Doe defendants from the action. The minute order stated only: "The Court finds that it is nonsense that this is a 'wage and hour case.' A Final Judgment on Default is rendered per the signed judgment to be filed and entered this date. [¶] Clerk to give notice to plaintiff and serve this judgment on plaintiff."

**DISCUSSION**

*Attorney Fees*

In his opening brief, Brunoehler requests attorney fees pursuant to section 218.5, as he did in his statement of points and authorities filed with the lower court.[5] The trial court's minute order was brief, but it appears that it awarded damages on the basis of Brunoehler's breach of contract claim rather than on his claim for failure to pay wages due.[6] In the absence of a specific ruling, we assume that the court denied attorney fees on the basis that it did not consider the action to be a "wage and hour case," as well. We review independently the lower court's interpretation of section 218.5 and its application to the specific circumstances. (*Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 294, overruled on other grounds in *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 175.)

Section 218.5 provides in relevant part: "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." Thus, on its face, the statute applies to "any action brought for the nonpayment of wages." The statute precisely describes Brunoehler's claim for unpaid salary, expenses, and health benefits. Attorney fees should not be denied on claims for unpaid wages simply because they were not paid in breach of contract.

Moreover, Brunoehler met the remaining requirements to entitle him to attorney fees under section 218.5. Although the complaint did not cite the statute specifically, it

---

[5] We note that although an attorney fee provision was included in the employment agreement, Brunoehler has not appealed the default judgment on that basis.

[6] This is also borne out in the tentative ruling, which was not incorporated into the court's final ruling, that stated, "This is simply a breach of contract case."

included a prayer for "costs of suit and attorney fees, including attorney fees pursuant to contract, statute, including section 1194, and/or any other basis," which is a sufficient request. (See *Plancich v. United Parcel Service, Inc*. (2011) 198 Cal.App.4th 308, 314 [request that a party "be awarded its reasonable costs and attorney's fees" complies with the requirements of section 218.5].) As a plaintiff awarded damages including unpaid salary, expenses, and health benefits in a default judgment, there is no question Brunoehler is the prevailing party. Finally, to the extent that the lower court denied attorney fees on the basis that Brunoehler was not paid on an hourly basis, it has been held that "the salaries of executives are protected wages, and that a cause of action for nonpayment of such wages falls under . . . section 218.5." (*On-Line Power, Inc. v. Mazur* (2007) 149 Cal.App.4th 1079, 1086.)

In light of the fact that Brunoehler met all the requirements of section 218.5, we conclude that the lower court erred in denying his request for attorney fees under the statute.

### *Dismissal of Hoon and Histostem*

Brunoehler argues the trial court erred in dismissing his action against Hoon and Histostem. Our review of the judgment reflects that the Doe defendants were dismissed, but the judgment does not purport to order dismissal as to Hoon and Histostem, who were named defendants. Upon remand, the trial court shall rule on Brunoehler's action against Hoon and Histostem.

## DISPOSITION

We reverse the judgment with respect to the lower court's denial of an award of attorney fees. The cause is remanded for the court to rule as to named defendants Hoon and Histostem, and for it to calculate reasonable attorney fees with respect to the judgment against Amstem. Brunoehler is awarded costs on appeal.


KRIEGLER, J.

We concur:


TURNER, P. J.


MOSK, J.

9